## Robinson v. Pennsylvania Assigned Claims Plan

*Eric I. Lerner,* for plaintiff.
*Risa J. Alberts,* for defendant.

HILL, *J.,* August 5, 1992 —

### I. OVERVIEW

Plaintiff has made a claim for uninsured motorist benefits and medical payments under the Pennsylvania Assigned Claims Plan. Plaintiff has alleged that on April 4, 1989, she was test driving an uninsured 1980 Ford Thunderbird owned by Otis Stevens which she intended to purchase. She was stopped for a red light at the intersection of Woodland Avenue and 48th Street in Philadelphia when the Thunderbird was struck from behind by another vehicle owned by Arthur Curry and driven

by Robert Deveo. As a result of the impact, plaintiff testified that the Thunderbird "moved forward" and she was jolted inside the car (N.T. 40). Shortly thereafter, a police officer arrived at the scene, issued a citation to Mr. Deveo and filled out a police report. The officer noted that there were no injuries at the scene and there was no damage to either vehicle.

Following the accident, plaintiff was treated by Leslie Bankoff, M.D. for a sprain and strain of the cervical and lumbosacral spine, a contusion of the left forearm and bilateral trapezius myofascitis. Dr. Bankoff has submitted medical bills in the amount of $4,225.00 representing approximately 54 physical therapy treatments and office visits during the five-month period between April and August of 1989.

Plaintiff has made a claim against the assigned claims plan. Under this plan eligible claimants may recover a total of $15,000 for uninsured motorist benefits, including up to $5,000 for medical payments. Defendant contends that plaintiff is not entitled to recover benefits from the assigned claims plan because she does not meet the eligibility requirements set forth in §1752 and §1754 of the Motor Vehicle Financial Responsibility Law.

## II. FINDINGS OF FACT

(1) Plaintiff Marilyn Robinson has brought this action for uninsured motorist benefits and medical payments pursuant to the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701, *et seq.*

(2) Defendant Pennsylvania Financial Responsibility Assigned Claims Plan is an organization of insurers that

provides limited statutory benefits to certain "eligible claimants" as that term is defined under §1752(a) of the MVFRL, 75 Pa.C.S. §1752(a).

(3) Defendant Travelers Insurance Company is the assigned servicing carrier of the plan and has been sued in that representative capacity by the plaintiff herein.

(4) On April 4, 1989, at approximately 10:30 p.m., plaintiff was driving a 1980 black Ford Thunderbird, Pennsylvania license plate RAY 243, on Woodland Avenue near 48th Street in Philadelphia. She had two passengers in the vehicle at the time.

(5) The vehicle plaintiff was driving belonged to Otis Stevens of Folcroft, Pennsylvania, who was in the business of selling automobiles. Plaintiff was test driving the Thunderbird and was to return the vehicle to Mr. Stevens the following day.

(6) While stopped for a red light at the intersection of Woodland Avenue and 48th Street, plaintiff's vehicle was struck in the rear by a 1979 Chevrolet owned by Arthur Curry and driven by Robert Deveo.

(7) Robert Deveo, who was operating the 1979 Chevrolet owned by Arthur Curry, caused the accident involving the plaintiff.

(8) As a result of the impact, plaintiff's vehicle moved forward and she was jolted forward inside the car.

(9) Shortly thereafter, a police officer arrived at the scene, filled out an accident report, and issued Mr. Deveo a citation.

(10) Plaintiff testified that she gave the police officer her driver's license and her vehicle registration. The court

finds, however, that plaintiff did not in fact produce a vehicle registration card since the vehicle she was driving was not registered at the time.

(11) At the time of the accident, plaintiff had a driver's license issued by the state of Maryland.

(12) Plaintiff obtained a Maryland driver's license while visiting her brother who lived in Maryland in December 1987.

Although plaintiff was a Pennsylvania resident at the time, she used her brother's address as her residence in order to be eligible for a Maryland driver's license. Plaintiff testified that she decided to get a Maryland driver's license so that she could "get around" while her brother was at work.

(13) Plaintiff never possessed a Pennsylvania driver's license.

(14) There were no injuries reported by the police officer and there was no damage to either vehicle as a result of the collision.

(15) The police report incorrectly listed Marie Debbie Robinson of 28 Jowhite Street, Easton, Maryland, as the owner of the 1980 Ford Thunderbird. The report does not contain any insurance information for either vehicle involved in the accident.

(16) Although plaintiff testified that she was personally not covered by any policy of automobile insurance which would provide first-party benefits, the court finds that plaintiff failed to introduce any evidence to establish whether the Ford Thunderbird she was operating at the time of the accident was covered by a policy of automobile insurance on April 4, 1989. It was plaintiff's burden to

prove that there was no insurance coverage on this vehicle in order to obtain first party benefits.

(17) The police officer testified that although it was her standard procedure at the scene of an accident to ask the parties involved what happened and to request insurance information, drivers' licenses, owners' cards, and/or temporary registration, she does not specifically recall whether or not she requested this information on April 4, 1989.

(18) The police officer testified that the fact that there is no insurance information listed on the report she filled out concerning either of the vehicles involved in the accident of April 4, 1989, does not necessarily mean that these vehicles were uninsured. If the driver does not have an insurance card, the officer testified that she does not list that there is insurance coverage on her report. The officer testified as follows:

*Q:* "So, if someone were driving a car that didn't belong to that person, didn't have the insurance card, you wouldn't know one way or the other whether that car was insured; is that correct?"

*A:* "That's correct." (N.T. 149)

(19) The day after the accident, plaintiff was treated by Leslie Bankoff, M.D., with complaints of pain in the back of her neck, her shoulders and left forearm.

(20) Plaintiff was referred to Dr. Bankoff by her lawyer.

(21) Dr. Bankoff diagnosed the following injuries to plaintiff: cervical and lumbosacral sprain and strain, a contusion of the left forearm and bilateral trapezius myofascitis.

(22) As a result of the aforementioned injuries, plaintiff received 54 physical therapy treatments at Dr. Bankoff's office during the five-month period between April and August of 1989.

(23) Plaintiff's medical bills which were admitted into evidence reflect total charges of $4,225.00 for doctor's visits and physical therapy treatments.

(24) At the time of the accident, plaintiff lived at 6077 Allman Street in Philadelphia with her aunt. Plaintiff stated that she lived in Maryland for a period of time in 1976 and then again in 1978 and 1979 but by 1987 she had returned to Philadelphia and was operating a catering business out of her aunt's home on Allman Street.

(25) Plaintiff filed income tax returns for the years 1987, 1988 and 1989, listing 6077 Allman Street as her residence.

(26) Plaintiff testified that she moved to New Jersey in 1991 where she presently resides.

(27) The court finds that plaintiff was a Pennsylvania resident at the time of the accident on April 4, 1989.

(28) At the time of the accident neither plaintiff nor anyone in her household owned a motor vehicle.

(29) Plaintiff had agreed to purchase the 1980 Thunderbird from Otis Stevens prior to the date of the accident and had made a down payment on the vehicle. The amount of the down payment was unspecified in the testimony. However, at the time of the accident plaintiff did not have continuous use of the vehicle and did not have her own set of keys to it. Plaintiff admitted that she did not "receive" the vehicle until she made final payment on it sometime after April 4, 1989.

(30) Plaintiff's aunt testified at trial that plaintiff did not own a motor vehicle at the time of the accident.

(31) The court finds that plaintiff did not "own" the Ford Thunderbird for purposes of §1752(a)(3) of the MVFRL on April 4, 1989.

(32) Plaintiff's brother gave her an automobile which was in poor condition prior to the date of the accident but she used this vehicle plus an unspecified amount of cash as a down payment on the Thunderbird. Therefore, plaintiff no longer owned the automobile which her brother had given her at the time of the accident.

(33) Plaintiff failed to produce any evidence to show that the 1980 Ford Thunderbird she was driving at the time of the accident was registered in Pennsylvania on that date.

(34) Prior to the trial counsel for defendant sent a request for vehicle information to the Pennsylvania Department of Transportation in Harrisburg, requesting all information on file as of April 4, 1989, for tag number RAY 243 in the name of Otis Stevens, 22 Grant Avenue, Folcroft, Pennsylvania. In response, defendant received a letter from PennDOT stating that tag number RAY 243 belonged to a 1971 Plymouth owned by David R. Anderson of 328 West Gay Street, West Chester, Pa., 19380. A further vehicle inquiry by owner name came up with six vehicles of varying makes and models all registered to Otis Stevens. None of these vehicles was a 1980 Ford Thunderbird. Furthermore, not one of these six cars was registered in Pennsylvania on April 4, 1989.

(35) Based on the information obtained by PennDOT, the court finds that the Thunderbird operated by plaintiff

was not registered in Pennsylvania on the date of the accident.

(36) Plaintiff failed to introduce any evidence concerning the insurance status of Robert Deveo, the driver of the 1979 Chevrolet (the striking vehicle).

(37) Plaintiff failed to introduce any evidence to establish whether the 1979 Chevrolet owned by Arthur Curry (the striking vehicle) was covered by a policy of insurance.

## III. CONCLUSIONS OF LAW

(1) Pennsylvania Assigned Claims (75 Pa.C.S. §1752) governs the responsibility of a designated assignee of the plan to pay benefits to injured persons who meet the requirements for eligibility as set forth in §1752(a) thereof. Travelers is the designated assignee in this case.

(2) To qualify as an eligible claimant under §1752 of the plan, plaintiff must establish the following by a preponderance of the evidence:

"(a) General rule.—A person is eligible to recover benefits from the assigned claims plan if the person meets the following requirements:

"(1) Is a resident of this Commonwealth.

"(3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).

"(5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage.

"(6) Is otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident...."

(3) Failure to meet any one of the above-mentioned criteria renders a claimant ineligible for benefits under the plan.

(4) In determining who is an owner of a motor vehicle for purposes of §1752(a)(3), the Superior Court has held in *Bethea v. Pa. Financial Responsibility Assigned Claims Plan et al.,* 407 Pa. Super. 57, 595 A.2d 122 (1991), that a legally cognizable ownership interest, i.e. a property interest, must be established in order for the ineligibility feature of §1752(a)(3) to be applicable. *Id.* at 63, 595 A.2d at 125. While record ownership should not be the sole deciding factor, some ownership interest is necessary. *Id.*

(5) In the case at bar, the court finds that at the time of the accident plaintiff did not own the Ford Thunderbird for purposes of §1752(a)(3) as she did not have title to the vehicle, she did not have continuous use of the vehicle and she did not have her own set of keys to it. Therefore, the court is unable to find any indicia of ownership which would support defendants' contention that plaintiff had a recognized property interest in the vehicle which would render her an ineligible claimant by virtue of §1752(a)(3).

(6) Section 1752(a)(5) provides, in part, that an operator or occupant of a motor vehicle which is owned by someone who is not required to provide first party benefits coverage is not eligible to recover those benefits from the plan, 75 Pa.C.S. §1752(a)(5).

(7) Defendants' contention that plaintiff is ineligible to recover benefits from the assigned claims plan by virtue of section 1752(a)(5) of the MVFRL is without merit. Plaintiff was not driving a car owned by someone who is not required to provide benefits or uninsured and underinsured motorist coverage. To the contrary, plaintiff was driving a car owned by someone "who" *is* "required to provide" coverage.

(8) Otis Stevens gave his permission to plaintiff to test drive his vehicle, knowing that the vehicle would be operated on the highway and he was therefore required to have insurance on it. 75 Pa.C.S. §1786(a). Thus, it cannot be said that the vehicle plaintiff was driving at the time of the accident was owned by someone who is not required to provide coverage.

(9) While plaintiff meets the requirements of §1752(a)(5), she does not meet the requirements of §1752(a)(6) and therefore is ineligible to recover benefits from the plan.

(10) Under §1752(a)(6) of the MVFRL, a person is eligible to receive benefits from the plan if he or she is not otherwise entitled to receive any first-party benefits under §1711 (relating to required benefits) or §1712 (relating to availability of benefits) applicable to the injury arising from the accident. Accordingly, plaintiff had the burden of showing that she had no other source of first party benefits available to her under §1711 and §1712.

(11) In order to determine what benefits are available under §1711 and §1712, it is necessary to examine the section of the MVFRL which sets forth in order of priority

the sources of first-party benefits where insurance coverage is available as follows:

"§1713. Source of benefits

"(a) General rule.—Except as provided in section 1714 (relating to ineligible claimants), a person who suffers injury arising out of the maintenance or use of a motor vehicle shall recover first-party benefits against applicable insurance coverage in the following order of priority:

"(1) For a named insured, the policy on which he is the named insured.

"(2) For an insured, the policy covering the insured.

"(3) For the occupants of an insured motor vehicle, the policy on that motor vehicle.

"(4) For a person who is not the occupant of a motor vehicle, the policy on any motor vehicle involved in the accident. For the purpose of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident unless it was parked so as to cause unreasonable risk of injury."

(12) Therefore, in order to meet her burden under §1752(a)(6), plaintiff had to prove that she had no insurance coverage through a personal or household policy *and that the vehicle she was operating at the time of the accident was uninsured.*

(13) Plaintiff failed to introduce any evidence to establish that the vehicle she was operating which she testified was owned by Otis Stevens at the time of the accident was uninsured. Mr. Stevens was not called as a witness nor was his deposition taken. The court must have more than mere surmise before it in order to find that plaintiff

has met her burden on this point. Under the circumstances and for reasons set forth in F.F. nos. 13 and 14, the court is unable to find that the Thunderbird was not covered by insurance. As a result, the court finds that plaintiff failed to establish that she was not entitled to receive first-party benefits from a source other than the plan for any injuries that she sustained as a result of the accident. Plaintiff is therefore ineligible for medical benefits under the assigned claims plan by virtue of §1752(a)(6) of the MVFRL.

(14) Based on the testimony of plaintiff, the court finds that Otis Stevens was the owner of the Thunderbird plaintiff was operating at the time of the accident, even though the PennDOT records did not show it as registered in his name and even though these records show that the tag number belonged to another vehicle owned by one David R. Anderson.

(15) It is possible that the Thunderbird had been recently registered to Otis Stevens but that the records of the Department of Transportation did not reflect this. Finally, it is possible that the Thunderbird was stolen but nonetheless still covered by insurance. Light could have been cast on all of this had Otis Stevens been called as a witness. There was no explanation as to why this was not done.

(16) In addition to claiming first-party medical benefits, plaintiff also claims damages in a tort action against the assigned claims plan. Coverage under the assigned claims plan is only applicable if the claimant meets the eligibility requirements set forth in §1754 of the MVFRL as follows:

"§1754. *Additional coverage*

"An eligible claimant who has no other source of applicable uninsured motorist coverage and is otherwise entitled to recover in an action in tort against a party who has failed to comply with this chapter may recover for losses or damages suffered as a result of the injury up to $15,000 subject to an aggregate limit for all claims arising out of any one motor vehicle accident of $30,000." 75 Pa.C.S. §1754.

(17) Since plaintiff is not an "eligible claimant" as that term is defined in §1752 of the MVFRL, the court finds that plaintiff is not entitled to uninsured motorist coverage under §1754.

## IV. DISCUSSION

Defendant contends that §1752(a)(5) of the MVFRL prohibits plaintiff from recovering first party benefits from the assigned claims plan where the vehicle she is driving is not registered in Pennsylvania at the time of the accident. Specifically, defendant argues that vehicles which are not registered in Pennsylvania are not required to provide first party benefits coverage under §1711 of the MVFRL. Defendant further argues that under §1752(a)(5), persons who operate motor vehicles which are not required to provide first party benefits are ineligible to recover those same benefits from the assigned claims plan.

Therefore, defendant contends that operators of vehicles which are not registered in Pennsylvania are ineligible for benefits under the assigned claims plan by virtue of §1752(a)(5).

Defendant cites several Common Pleas Court decisions to support her interpretation of §1752(a)(5) of the MVFRL. See *Sylvia Johnson et al. v. Pennsylvania Financial Responsibility Assigned Claims Plan and Travelers Insurance Company,* 23 Phila. 1 (1991); *Tawanda Perry et al. v. Kemp, English and Travelers Insurance Company,* No. 4724, September Term, 1990, Phila. C.C.P. (Order of April 30, 1991, and opinion of October 2, 1991) (on appeal); *Florence Sewell v. James E. Harley et al.,* No. 2056, July Term, 1990, Phila. C.C.P. (Order of July 9, 1991); *Willette London et al. v. Pennsylvania Financial Responsibility Assigned Claims Plan et al.,* No. 4511, February Term, 1989, Phila. C.C.P. (Order of January 3, 1991); *Diane Crocker v. Travelers Insurance Company,* No. 535, October Term, 1989, Phila. C.C.P. (Order of December 18, 1989 and order and opinion of April 19, 1990).

This court does not agree that these holdings are determinative on this point. Section 1752(a)(5) expressly refers to an *"individual or entity* who or which is not required to provide benefits." In the case at bar, Otis Stevens was someone who was required to provide coverage because the Thunderbird which he was in the process of selling to plaintiff was still owned by him and was being operated on a Pennsylvania highway. Since Otis Stevens knew plaintiff was going to "test drive" the Thunderbird on a Pennsylvania highway, he was required to register the vehicle and provide benefits. See §1786(a). Since Otis Stevens was doing business in Folcroft, Pa., it is obvious that he knew that some of the "test driving" would take place in Pennsylvania. Under §1786(a), "Every motor vehicle ... which is *operated or* currently registered shall be covered by financial responsibility." 75 Pa.C.S. §1786(a). (emphasis added)

While the Thunderbird was not registered, it was operated in Pennsylvania and, therefore, was required to have insurance coverage.

Accordingly, plaintiff is eligible under the requirements of §1752(a)(5). However, plaintiff does not meet the requirements of §1752(a)(6) and is therefore ineligible to recover from the assigned claims plan.

It is incumbent upon plaintiffs who institute suits against the assigned claims plan to examine all reasonable leads which may be probative as to whether or not there is insurance on a vehicle involved in an accident. In the case at bar, plaintiff should have made a reasonable effort to produce Otis Stevens, an obvious witness, who might have been able to clarify the question of the insurance status of the 1980 Ford Thunderbird which plaintiff testified he owned and was in the process of selling to her. In fact, plaintiff knew who Mr. Stevens was, apparently had his address and yet did nothing. If for some unexplained reason plaintiff was unable to locate Mr. Stevens, she should have at least produced evidence to prove that she had attempted to track him down and subpoena him to appear in court. In the case at bar there is no evidence that plaintiff made any effort to track down the details concerning the Thunderbird's insurance coverage and failed to produce any evidence at all to establish that it was uninsured at the time of the accident. Moreover, there should have been an explanation as to why under the circumstances, plaintiff, who was buying the Thunderbird, had no information concerning its tags, registration and insurance status or lack thereof.

Surely, a litigant who claims relief under this plan must do more than profess ignorance of the insured status of the vehicle she was driving at the time of the accident and was, in fact, buying. To permit recovery in this case

would open the door to abuses not contemplated by the legislature in enacting this protection for victims of automobile accidents.

In conclusion, the court cannot bridge gaps in the evidence with guesswork and plaintiff has not proved her case by a preponderance of the evidence.

## V. ADJUDICATION

And now, August 5, 1992, following a non-jury trial on November 20, 1991, and the submission of briefs by the parties, the court enters an adjudication in favor of the defendants, Pennsylvania Financial Responsibility Assigned Claims Plan and Travelers Insurance Company, and against plaintiff, Marilyn Robinson.