407 Pa. Superior Ct. 57 (1991)
595 A.2d 122
Carolyn BETHEA, Appellant
v.
PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN and the Travelers Insurance Company and Rosemarie Amicone and Philip C. Carfagno.
Superior Court of Pennsylvania.
Argued April 3, 1991.
Filed July 23, 1991.
*58 Susan I. Schulman, Philadelphia, for appellant.
Laura W. Helbling, Medi, for Pa. Financial, appellee.
Before WIEAND, OLSZEWSKI and BROSKY, JJ.
BROSKY, Judge.
This is an appeal from an order granting appellees' (Pennsylvania Financial Responsibility Assigned Claims Plan and The Travelers) motion for summary judgment and dismissing appellant's complaint asking for uninsured motorist benefits under the assigned claims plan. Appellant raises one issue, whether the spouse of the registered owner of an uninsured motor vehicle is entitled to benefits under the Pennsylvania Assigned Claims Plan.
Appellant was driving an uninsured vehicle when the vehicle she was driving was struck by another vehicle which was also uninsured. Appellant filed an action against the owner and driver of the other vehicle and against the Plan seeking first party and uninsured motorist benefits. The vehicle appellant was driving was registered in her husband's name alone. Appellant and her husband lived in the same household and were not estranged.
Appellees filed a motion for summary judgment alleging appellant was ineligible for the claimed benefits under the *59 provisions of 75 Pa.C.S. § 1752(a)(3),[1] which states that one cannot recover benefits if he/she is the owner of a motor vehicle required to be registered under Chapter 13. The trial court granted appellees' motion finding that appellant was an "owner" of the vehicle in question as the vehicle had been purchased during the marriage of the parties and would be considered marital property. Thus, appellant was a constructive owner of the vehicle in question even though the vehicle was titled in her husband's name alone.
Any discussion of this dispute must involve the case of Ibarra v. Prudential Property & Casualty Co., 402 Pa.Super. 27, 585 A.2d 1119 (1991). In discussing the identical issue that is presently before us relative to section 1714 of the Code,[2] a panel of this court found that an estranged wife driving her husband's automobile which was then uninsured would not be prevented from claiming under the Plan simply because under the Divorce Code she may have an equitable distribution right to the vehicle. However, we cannot say that Ibarra necessarily holds that title ownership is the sole factor governing this inquiry. Nor can we readily conclude that Ibarra compels reversal here.
It does not appear that the Ibarra panel, in rendering its decision, was relying solely on the fact that the appellant there was not a registered or titled owner of the vehicle. Had that been considered the dispositive factor, irrespective of any other factor, Ibarra could have been rather summarily dismissed. Instead the panel considered Divorce Code definitions and Motor Vehicle Code definitions as well as other indicia of ownership. The case must be read to indicate that, in the very least, the definition of marital property found in the Divorce Code will not control the *60 determination either. However, the case appears to acknowledge or leave open the proposition that a non-titled or registered owner can be an owner for purposes of the Act and section in question, for the panel finds it necessary to discuss other indicia of ownership such as regularity of usage or availability, the possession of keys and the permanent location of the vehicle. Furthermore, the court discusses the vague concept of "the property right" found in the definitional section of the Motor Vehicle Code, all of which would have been unnecessary had the panel decided to limit the inquiry to the record ownership.
Because the exact holding or premise to be gleaned from Ibarra is not immediately ascertainable it is necessary for us to interpret the case consistent with the policy of the Act and with the factual pattern presented there. For the reasons that follow, we conclude that Ibarra should be construed to represent that more than a mere contingent equitable distribution right is necessary to find ownership for purposes of the Act. However, we cannot read that decision as holding that an ownership interest that is marital in nature is wholly irrelevant to this inquiry.
We start our analysis with the found purpose of section 1714. As stated in Allen v. Erie Insurance Co., 369 Pa.Super. 6, 534 A.2d 839, 840 (1987), the legislature "was primarily concerned with the rising consumer cost of automobile insurance, created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid.... The Act has the effect of requiring all owners of registered vehicles to share the burden of insurance before they can obtain the benefits." In DeMichele v. Erie Insurance Exchange, 385 Pa.Super. 634, 561 A.2d 1271, 1273 (1989), we stated "[t]he statute was created to ensure that one may not receive first-party benefits unless he has the ability to provide them to another." Although these commentaries were offered respective to § 1714, section 1752(a)(3) must be regarded as having the same purpose as § 1714. The most logically compelling reason for inclusion of this particular *61 exemption in § 1752(a) would be to exclude from participation an individual who is obligated by law to provide financial responsibility. The absence of language in § 1752(a)(3) specifying owners who do not have financial responsibility, as is present in § 1714, is explained by the fact that the Assigned Claims Plan is not implicated unless there is an absence of other available insurance coverage under the source of benefits section, § 1713. In other words, in discussing claims under the Assigned Claims Plan it is a given that the claimant does not have financial responsibility and it would be superfluous to qualify ownership of a vehicle with failure to provide financial responsibility. Thus, in excluding owners of vehicles in § 1752(a)(3), the legislature is effectively excluding owners of vehicles who have not obtained insurance coverage from claiming benefits under the Act. Having acknowledged a policy that limits benefits under the Act to those who also contribute to the pool or provide financial responsibility we must now consider whether it is consistent with this policy to find a spouse of a record owner of an unregistered vehicle similarly disqualified.
In the typical marital unit the partners of the marriage are partners in most aspects involving the marital unit. Earnings of both spouses, assuming that both contribute financially, are pooled and used to pay bills accruing to either party or to both, and even if bills happen to be split by agreement of the marriage partners there is a mutual flow of benefits by the arrangement. The same is true even if only one spouse is earning income. Our law has always acknowledged the fact that the non-working spouse is providing substantial benefits to the marriage which also enable the "breadwinner" to earn an income. Furthermore, most often management of financial matters is a task that both partners have a certain amount of input on, and certainly, an imputed responsibility for. In such an environment, is it consistent with the policy of the section in question to treat a non-record owning spouse differently than a record owning spouse? We think not. In the typical *62 marital unit where the vehicle is shared, the responsibility relating to it should also be thought of as shared. Furthermore, to allow record ownership to be the sole determining factor could lead to seemingly inconsistent results between different married couples without necessarily being tied to any sound policy.
Consider for example a situation where two married couples purchase an automobile with marital funds and that under either the Divorce Code or our property law the vehicles would be deemed to be the property of both partners of the marriage. However, for whatever reasons one couple chooses to title the car in the name of only one spouse while the other couple has the car jointly titled. If we were to allow record ownership to control and if both couples do not provide financial responsibility, in one couple both parties would be excluded from receiving benefits under the Act while in the other couple one spouse would remain eligible. Savvy couples could expand their insurance protection by one-half simply by titling the car in the name of one spouse, (it would be a particularly effective strategy if the spouse who used the vehicle most infrequently assumed title ownership). All other things being equal, there seems little reason or rationale to treat similarly situated individuals so differently. To rely solely on the record ownership is an overly technical approach which does not necessarily effectuate the purposes of the section in question. To truly effectuate the policy of the Act, it would seem that where both parties to a marriage enjoy indicia of ownership and are, in fact, joint owners of the vehicle, both should be excluded from benefitting under the Act if financial responsibility is not obtained. This is the essence of the section in question, to disqualify from participation those who can reasonably be held responsible for securing financial responsibility and who choose not to do so. Thus, we do not think that it is sound to allow the record ownership to be the sole determining factor.
On the other hand, the Act does, by its language, base the ineligibility feature on the basis of ownership. Consequently, *63 we believe a legally cognizable ownership interest, i.e. a property interest, must be established in order for the ineligibility feature to be applicable, otherwise we would be expanding a feature of the act beyond the words chosen by the legislature. Inasmuch as the section in question disqualifies an individual from participation, a reasonably harsh result, we would not wish to expand the application of this section beyond that reasonably suggested by the language of the section itself. Thus, mere indicia of ownership, i.e. usage or availability to the non-owning spouse or possession of keys to the vehicle, should not disqualify that spouse from participating under the Act if in fact there is no recognized property interest in the vehicle. If the legislature intended this result they should amend the statute to clarify the scope of the section in question. However, having reached a conclusion that record ownership should not be the sole deciding factor, but that some ownership interest is necessary, we are logically brought back to the question of marital property rights.
If we are to disregard the record ownership of the vehicle in determining the scope of section 1714 but are requiring some ownership/property interest, and if we are dealing with married couples, it appears obvious that property interests that have a genesis in the marital relationship cannot be excluded from consideration. Not only are they likely to be the most prevalent type of non-record ownership interests in married individuals, but they are also legally recognized and enforceable rights as well. In DiFlorido v. DiFlorido, 459 Pa. 641, 331 A.2d 174, 180 (1975), our Supreme Court discussed property rights of married individuals in household goods and stated that "property that has been acquired in anticipation of marriage, and which has been possessed by both spouses, will, in the absence of evidence showing otherwise, be presumed to be held jointly by the entireties."
In Simon v. Simon, 286 Pa.Super. 403, 429 A.2d 1 (1981), we considered ownership of a vehicle titled in husband's name alone and concluded that the truck was entireties *64 property. The truck had been acquired by trading in another truck, titled in husband's name alone, and with cash from a joint bank account. We stated that the truck was used for the benefit of the marriage with both parties having access to use. Under these facts, we concluded, the truck was entireties property. Thus, it is easy to see that a non-record owning spouse can, indeed, have substantial, recognized and legally enforceable ownership interests in a motor vehicle that does not bear his or her name on the title. To the extent a non-record owning spouse can be found to be an owner under entireties property law, there would seem to be a logical basis for allowing section 1714 to apply to that spouse. However, in making such a determination we must be careful not to conflict with the decision in Ibarra. Ibarra must be reconciled with any holding we make today.
Although it is impossible to read the minds of the Ibarra panel members to discern what factors governed their decision, a factual problem can be seen in the Ibarra case. That is, although Ibarra may have had a certain cognizable and contingent marital property right in the vehicle, she had no other indicia of control or ownership of the vehicle. That vehicle was titled in her estranged husband's name alone, she did not use the car with any degree of significant frequency and the parties were no longer living together as a marital unit. Consequently, returning to the purpose of the section in question, under the facts of Ibarra, a contingent equitable distribution right notwithstanding, there was no reasonable basis in the facts presented there upon which Ibarra could be charged with an obligation to secure financial responsibility for the car she had been driving. Thus, to disqualify Ibarra simply because of the fact that she was married to the title owner of the vehicle who had not elected to insure the vehicle, would have been unjust. Specifically, we believe, this was the predominant reason that Ibarra rejects the trial court's reliance upon a Divorce Code definition. To exclude Ibarra under the facts presented there would seem not only unfair but also inconsistent with the purpose of the Act. A contingent equitable distribution *65 right without some other indicia of ownership which could support, in logic and reason, an obligation to provide financial responsibility should not, and does not under Ibarra, disqualify an individual from claiming under the Act. Significantly, there was nothing else in the factual context of Ibarra which would support a finding of ownership.
However, unless the courts are willing to limit the inquiry to record ownership it seems impossible to wholly reject property interests which arise because of the marital relationship. After all, these property interests are founded not only in statute, but also in long-standing property law principles. Since Ibarra does not appear to limit the inquiry to record ownership we believe it must be read to disallow total reliance upon a technical Divorce Code interest but allow exclusion under § 1714 of the Act if other indicia of ownership are present. We would also interject, for the reasons outlined above, a requirement that there be an actual cognizable property right in the vehicle as well as de facto indicia of ownership to satisfy the section in question. In the present case, the summary judgment was granted based solely upon the fact that appellant was residing with her husband at the time of the accident. However, there is nothing in the record which conclusively establishes that appellant has any recognizable property interest in the vehicle. It is possible that despite the fact that the parties are married the vehicle was, considering the entire body of property law, solely the property of her husband. If such is the case, then appellant is not an "owner" of the vehicle and should not be excluded from benefits under the Act based upon § 1714. However, even if appellant is found to have a property interest in the vehicle under marital property law, appellee would still be obligated to show that there exists indicia of ownership which would, consistent with the purpose of the Act, support imputing the obligation to provide financial responsibility to appellant. Since the record fails to support, under these factors, a basis for disqualifying appellant under section 1714, we vacate the order appealed from and remand *66 for additional proceedings consistent with this opinion.
Order vacated, remanded for further proceedings. Jurisdiction relinquished.
OLSZEWSKI, J., files a dissenting opinion.
OLSZEWSKI, Judge, dissenting:
I respectfully dissent from the majority opinion. I would affirm the order of the trial court on the basis that the car was "marital property", and that the non-titled spouse is an owner under 75 Pa.C.S.A. § 1752(a)(3).
The majority argues that:
... mere indicia of ownership, i.e. usage or availability to the non-owning spouse or possession of keys to the vehicle, should not disqualify that spouse from participating under the Act if in fact there is no recognized property interest in the vehicle.
(Majority opinion at 125.) I cannot agree with this distinction. An automobile purchased during the marriage, titled in the name of one spouse, and available for the use of the other spouse is marital property. Marital property is "all property acquired by either party during the marriage." 23 Pa.S.A. § 401(e). An adult member of a marital couple in which one spouse purchases a potentially dangerous vehicle must be held accountable for insuring that any damages resulting from the use of that vehicle are covered. When appellant put herself behind the wheel of the car, she put herself and others at risk. Requiring a showing that some "recognized property interest" exists opens the door to subversive methods of avoiding responsibility for damages resulting from property over which both spouses show apparent dominion.
This dissent is consistent with Ibarra v. Prudential Property & Casualty Co., 402 Pa.Super. 27, 585 A.2d 1119 (1991). In Ibarra, the automobile involved in the accident was not registered or titled to the woman driving the car and she was entitled to receive benefits under the Pennsylvania *67 Assigned Claims Plan. Unlike the instant case, however, the woman in Ibarra was estranged from her husband. The two people no longer held themselves out to the public as one unit, and the estranged wife would not be assumed to have free access to an automobile in her estranged husband's possession. The estranged wife had no indicia of ownership; rather, she became like any other borrower and should not have suffered for the titled owner's failure to insure the vehicle by virtue of their former united status.
Requiring a showing of actual property interest in a marital situation would defeat the purpose of 75 Pa.C.S.A. § 1752, which states:
(a) General rule.  A person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirments:
... (3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).
75 Pa.C.S.A. § 1752(a)(3). I cannot agree with a holding that would potentially permit recovery to a spouse who supports the purchase of a vehicle and publicly shows all signs of ownership, but who fails to ensure the recovery of others put at risk by that spouse's behavior. A showing of actual property interest is too intangible and subject to abuse. When property is purchased during the marriage and both spouses show indicia of ownership, these factors are enough to define both spouses as "owners" and to deny any recovery under the Assigned Claims Plan.
Accordingly, I dissent from the majority opinion. I would affirm the order granting appellee's motion for summary judgment and dismissing appellant's complaint.
NOTES
[1] Section 1752 states: "(a) General rule.  A person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirements: ... (3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles)."
[2] Section 1714 states "[a]n owner of a currently registered motor vehicle who does not have financial responsibility ... cannot recover first party benefits."