**Ronald Urey HABBYSHAW**

v.

**COMMONWEALTH of Pennsylvania, DE-PARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted May 3, 1996.

Decided Oct. 18, 1996.

Timothy P. Wile, Assistant Counsel In-Charge, and Harold H. Cramer, Assistant Chief Counsel, for Appellant.

No appearance entered for Appellee.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

The Department of Transportation (DOT) appeals an order of the Court of Common Pleas of Crawford County reversing the suspension of the operating privileges of Appellee Ronald Habbyshaw. We reverse the trial court's decision and reinstate Appellee's suspension.

Appellee was stopped by a Meadville City police officer on March 13, 1995, while driving a car registered in his wife's name. The car was not insured, and he was cited for violating Section 1786(f) of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1786(f). He pled guilty to the summary offense of operating a motor vehicle without proof of financial responsibility, and paid a fine and costs. DOT then suspended Appellee's operating privileges for three months pursuant to Section 1786(d).

Appellee appealed the suspension, claiming that he was not an owner or registrant of the car in which he was stopped.

On October 11, 1995, the trial court issued an opinion and order sustaining Appellee's appeal and reversing the DOT order. The trial court determined that Appellee was not an "owner" of the car in which he was stopped and so could not be subject to a suspension for violating Section 1786. The court also concluded that Appellee could not be collaterally estopped from denying that he was the owner because he had pled guilty to the summary conviction. DOT's appeal of that decision is now before us.[1]

DOT argues on appeal that the trial court erred as a matter of law in concluding that the Appellee was not the owner of the car in question because 1) he pled guilty to the violation of Section 1786(f) and so should be estopped from now claiming that he is not the "owner" of the car; and 2) based upon the facts of this case, Appellee is an "owner" of the car because it was purchased by his wife during their marriage and he had free access to it. We agree.

Section 1786 of the MVFRL provides in pertinent part as follows:

§ 1786. **Required financial responsibility**

(a) **General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

. . .

(d) **Suspension of registration and operating privilege.**—The Department of Transportation shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter and *shall suspend the operating privilege of the* **owner or registrant** *for a period of three months if the department determines that the* **owner or registrant** *has operated or permitted*

**1.** In this case, our scope of review is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court made an error of law or committed an abuse of discretion in coming to a

*the operation of the vehicle without the required financial responsibility . . . .*

. . .

(f) **Operation of a motor vehicle without required financial responsibility.**—Any **owner** of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation **shall not operate the motor vehicle or permit it to be operated** upon a highway of this Commonwealth without the financial responsibility required by this chapter. In addition to the penalties provided by subsection (d), any person who fails to comply with this subsection commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $300.

75 Pa.C.S. § 1786. It is clear under this provision that the penalties for failing to comply with the financial responsibility requirements, including criminal and administrative penalties, apply only to owners or registrants. In this case it is not disputed that Appellee was not a registrant of the car in question. The trial court found that the car was titled in Appellee's wife's name alone, and this finding is supported by competent evidence of record. The issue, therefore, is whether Appellee can be deemed an "owner" of the car registered in his wife's name.

Section 102 of the Vehicle Code defines "owner" as follows:

A person, other than a lienholder, having the property right in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security.

75 Pa.C.S. § 102. We have previously recognized that under this definition there may be both a legal and an equitable owner of a motor vehicle. *Department of Transportation v. Walker*, 136 Pa.Cmwlth. 704, 584 A.2d 1080 (1990). As we stated in *Walker*:

decision. *Department of Transportation, Bureau of Driver Licensing v. Marpoe*, 157 Pa.Cmwlth. 603, 630 A.2d 561 (1993), *petition for allowance of appeal denied*, 536 Pa. 648, 639 A.2d 34 (1994).

It follows that Section 102 of the [Vehicle] Code does not provide nor intend to provide that title to a motor vehicle shall determine absolute ownership of such. In fact, our research reveals that in Pennsylvania, the certificate of title constitutes no more than some evidence of ownership. *Id.*, 584 A.2d at 1082, citing *Semple v. State Farm Mutual Automobile Insurance Co.*, 215 F.Supp. 645 (E.D.Pa.1963). *See also Aetna Casualty & Surety Co. v. Duncan*, 972 F.2d 523 (3d Cir.1992) (under Pennsylvania law, a state-issued certificate of title is in no way controlling on the question of ownership).

The trial court in the case at bar looked beyond title ownership to consider whether Appellee had a property interest in his wife's car. In concluding that he did not, the court applied and distinguished a line of Superior Court decisions interpreting the Vehicle Code definition of owner.

In *Ibarra v. Prudential Property & Casualty Insurance Co.*, 402 Pa. Superior Ct. 27, 585 A.2d 1119 (1991), first of all, the Court addressed the definition of owner for purposes of Section 1714 of the MVFRL, 75 Pa.C.S. § 1714, which precludes an owner of a vehicle who does not have financial responsibility from recovering first party benefits. The wife in *Ibarra* was injured in an accident while driving an uninsured vehicle titled only in her estranged husband's name. The Court rejected the trial court's reliance on the Divorce Code to determine that the uninsured vehicle in question was marital property[2], so automatically conferring ownership status on the wife. Instead, the Court looked to the Vehicle Code definition of "owner," concluding that ownership is evidenced by either having title to a vehicle or having the property right in a vehicle. Without directly addressing what would constitute evidence of a property right in a vehicle, the Court held that the wife was not an owner of, and had no property right in, the uninsured vehicle. The Court did mention factors which it considered as demonstrating lack of ownership, such as the fact that the car was permanently located at the other spouse's residence and that she did not have regular use of the car or her own set of keys.

In *Bethea v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 407 Pa. Superior Ct. 57, 595 A.2d 122 (1991), a different panel of the Superior Court clarified the reasoning of *Ibarra* in addressing the issue of who is an owner for purposes of Section 1752(a) of the MVFRL, 75 Pa.C.S. § 1752(a). Under Section 1752(a), a person is eligible to recover benefits from the Assigned Claims Plan only if he is not the owner of a vehicle required to be insured under the MVFRL. In *Bethea*, a woman was in an accident driving an uninsured vehicle registered in her husband's name. Unlike in *Ibarra*, the couple was not estranged and lived in the same household, and the *Bethea* court held that the wife *was* an owner of the vehicle. The Court concluded that the *Ibarra* decision did not limit the definition of owner to record ownership or to a technical Divorce Code analysis of marital property rights, but would permit consideration of other "indicia of ownership." Such "indicia of ownership" require that there be an actual cognizable property right in the vehicle, under marital property law, *and* de facto indicia of ownership. *Id.* at 65, 595 A.2d at 126.[3]

Most recently, in *Allen v. Merriweather*, 413 Pa. Superior Ct. 410, 605 A.2d 424 (1992), *petition for allowance of appeal denied*, 533 Pa. 622, 620 A.2d 489 (1993), the Court applied the analysis adopted in *Bethea* to find that a husband was an "owner" of a vehicle titled in his wife's name for purposes of Section 1714 of the MVFRL, 75 Pa.C.S. § 1714. The Court found that the husband had an actual property right in the vehicle, because it was purchased after they were married. The Court then examined the evidence of record to discern whether there was de facto indicia of ownership. It concluded

**2.** Under the Divorce Code, "marital property" is defined as "all property acquired by either party during the marriage." 23 Pa.C.S. § 401(e).

**3.** *See also Aetna Casualty & Surety Co., supra.* (in defining an "owner" under Section 102 of the Vehicle Code, Pennsylvania courts look to see who it is that in fact possesses the attributes commonly associated with ownership, including the use, benefit, possession, control, responsibility for, and disposition of, the vehicle in question).

that the facts supported the conclusion that such indicia existed, including the following factors: the husband and wife resided together at the time of the accident; the wife allowed her husband to drive the vehicle which he knew to be uninsured; and he was returning from a personal errand at the time of the accident.

We now apply the Superior Court's reasoning in *Allen* and *Bethea* to evaluate the ownership of a motor vehicle for purposes of Section 1786 of the MVFRL. In this regard, we must determine whether Appellee had a property right to his wife's car and demonstrated sufficient "indicia of ownership" so as to be subject to the penalties of the MVFRL.

The trial court in the instant case concluded that Appellee did not have a property interest in his wife's car, even though it was purchased during their marriage, and that there was insufficient indicia of ownership based upon the evidence presented. We agree with DOT, however, that the facts presented demonstrate sufficient indicia of ownership to establish, as a matter of law, that both Appellee and his wife were "owners" of the car in question.

First of all, as found by the trial court, the car was acquired by Appellee's wife during the marriage with Appellee. (Slip op. at 8.) Accordingly, under *Allen* and *Bethea,* the car is marital property, and Appellee has a property right to it. In addition, the record clearly demonstrates de facto indicia of ownership with regard to Appellee. At the time of his traffic stop, he and his wife were married and living together. The car Appellee was driving was the only vehicle in the household, and he was the only licensed driver. Appellee was on a personal errand at the time, a job interview, and he had not asked his wife's permission to use the car for that

errand. He had access to the car and drove it knowing it was uninsured.

These facts are sufficient, under the Superior Court's reasoning in *Allen,* to establish indicia of ownership necessary to satisfy the test for determining whether an operator is also an "owner" within Section 102 of the MVFRL. Accordingly, we hold that the trial court erred as a matter of law in concluding that Appellee was *not* an owner for purposes of Section 1786 of the MVFRL.[4]

### ORDER

AND NOW, this 18th day of October, 1996, the order of the Court of Common Pleas of Crawford County dated October 11, 1995, is reversed, and the suspension of Appellee Ronald Urey Habbyshaw's operating privilege is reinstated.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Unlike the majority, I agree with the Court of Common Pleas of Crawford County (trial court) that the Department of Transportation, Bureau of Driver Licensing (DOT), failed to prove that Ronald Urey Habbyshaw (Licensee) is an "owner" of his wife's 1992 Ford Thunderbird (Thunderbird) under section 102 of the Vehicle Code.[1] Thus, I would affirm the trial court's reversal of DOT's suspension of Licensee's operating privileges pursuant to section 1786(d) of the Vehicle Code,[2] although I would do so for different reasons.

In deciding this case in favor of Licensee, the trial court applied the tests set forth in *Bethea v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 407 Pa. Superior Ct. 57, 595 A.2d 122 (1991), and *Allen v. Merriweather,* 413 Pa. Superior Ct. 410, 605 A.2d 424 (1992), *petition for allowance of appeal denied,* 533 Pa. 622, 620 A.2d 489 (1993), concluding that Licensee's wife rebut-

---

**4.** In so concluding, we need not address DOT's estoppel argument.

**1.** Section 102 of the Vehicle Code, 75 Pa.C.S. § 102, defines "owner" as a person having "the property right in or title to a vehicle." Here, Licensee's wife holds title to the Thunderbird; thus, in order to show that Licensee is also an "owner," DOT must demonstrate that Licensee has "the property right in" the vehicle.

**2.** Section 1786(d) of the Vehicle Code, 75 Pa.C.S. § 1786(d) (emphasis added), provides that DOT:

shall suspend the operating privilege of the *owner* or registrant for a period of three months if [DOT] determines that the *owner* or registrant has operated ... the vehicle without the required financial responsibility.

ted the presumption that the Thunderbird titled only in the wife's name is marital property, and that there were no *de facto indicia of ownership*.

Likewise, in reaching a contrary result, the majority also relies upon *Bethea* and *Allen*. (Majority op. at 1284.) I believe that both the trial court's and the majority's reliance on these cases is misplaced. Indeed, the issue here is whether the vehicle which belonged to Licensee's wife prior to her marriage to Licensee "continue[d] to be the property of such woman, as fully after her marriage as before." [3] Because the trial court found from the record here that this vehicle which Licensee's wife acquired during the marriage was in exchange for property which she owned prior to her marriage, Licensee's wife owns this vehicle independent of her Licensee husband. Because there is no evidence in either *Bethea* or *Allen* that the vehicle that was purchased during the marriage had been purchased with funds that were the separate property of one of the marital parties prior to the marriage, the superior court never had to address the issue that confronts us here. Thus, in my opinion, *Bethea* and *Allen* are not applicable here.

Nevertheless, if we were to apply the rule of law set forth in *Bethea* and *Allen* to the facts of this case, I would still not conclude, as the majority has done, that Licensee is an "owner" of his wife's Thunderbird. Under *Bethea*, in order to prove Licensee's "owner-

ship" of the Thunderbird, DOT must demonstrate: (1) an actual cognizable property right in the vehicle as well as (2) de facto indicia of ownership. The majority concludes that Licensee has an actual cognizable property right in the Thunderbird because his wife acquired the vehicle during her marriage to Licensee; thus, the Thunderbird is marital property.[4] (Majority op. at 1284.)

However, section 3501(b) of the Domestic Relations Code, 23 Pa.C.S. § 3501(b) (emphasis added), states:

> **(b) Presumption.**—All real or personal property acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership.... *The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a).*

Subsection (a) indicates that: "[P]roperty acquired [during the marriage] in exchange for property acquired prior to the marriage" is *not* marital property. Section 3501(a)(1) of the Domestic Relations Code, 23 Pa.C.S. § 3501(a)(1).

Here, Licensee's wife had acquired a 1992 Dodge Colt prior to her marriage. During her marriage, she sold the Dodge Colt and bought the Thunderbird to replace it.[5] Thus, the Thunderbird is property which Licen-

---

**3.** Section 6 of the Act of April 11, 1848, P.L. 536, 48 P.S. § 64, states:

> Every species and description of property, ..., which may be owned by or belong to any single woman, shall continue to be the property of such woman, as fully after her marriage as before....

**4.** The majority makes reference to the general definition of "marital property" in the Divorce Code at 23 Pa.C.S. § 401(e). (Majority op. at 1283, n. 2.) However, the Divorce Code was repealed by section 6 of the Act of December 19, 1990, P.L. 1240. The codification of the law on marital property is now found at 23 Pa.C.S. § 3501.

**5.** Licensee's wife purchased the Thunderbird in her own name, applied for the title in her own name, obtained financing in her own name, made the car payments out of her own earnings,

got automobile insurance in her own name and paid the insurance premiums from her own pocket. (R.R. at 20a–28a.) She worked a full-time and a part-time job in order to accomplish this. (R.R. at 25a.)

Pennsylvania has long recognized a married woman's right to separate property. Section 1 of the Act of July 15, 1957, P.L. 969, 48 P.S. § 32.1, states:

> Hereafter, a married woman shall have the same right and power as a married man to acquire, own, possess, control, use, convey, lease or mortgage any property of any kind, real, personal, or mixed....

Moreover, section 1 of the Act of April 3, 1872, P.L. 35, 48 P.S. § 34, provides:

> The separate earnings of any married woman of the state of Pennsylvania ... shall accrue to and enure to the separate benefit and use of said married woman, and be under the control of such married woman independently of her husband....

see's wife acquired during the marriage in exchange for property which she had acquired prior to the marriage. Indeed, the trial court found that "it was the wife's old premarital vehicle that created the funds for the new vehicle."[6] (Trial court op. at 9.) Clearly, then, the Thunderbird is *not* marital property, and Licensee does not have an actual cognizable property right in it.

Under *Bethea*, 407 Pa. Superior Ct. at 65, 595 A.2d at 126–27:

> [E]ven if [the licensee] is found to have a property interest in the vehicle under marital property law, [DOT] would still be obligated to show that there exists indicia of ownership. . . .

Because I do not believe that DOT met its burden of proof with respect to the first prong of the test, I would not examine the second prong. However, I will do so here because I cannot accept the majority's position that there are sufficient de facto indicia of Licensee's ownership in this case to make Licensee an "owner" of his wife's Thunderbird.

The majority reaches its conclusion based on the fact that, at the time of the traffic stop: (1) Licensee and his wife were married and living together; (2) the Thunderbird was the only car in the household, and Licensee was the only licensed driver; (3) Licensee was on a personal errand and had not asked his wife's permission to use the car; and (4) Licensee had access to the car and drove it knowing it was uninsured. (Majority op. at 1284.)

First, it is evident from section 3501(a)(1) of the Domestic Relations Code that a couple's marriage does not preclude sole ownership of a vehicle by one of the two. Moreover, I fail to see how "living together" creates an ownership interest in a partner's separate property. Second, although the Thunderbird was the only car in the house-

hold at the time of the traffic stop, Licensee's wife owned it as her separate property. It is unthinkable that a husband can gain an ownership interest in his wife's vehicle by selling his own car, as Licensee did here. The fact that Licensee's wife does not *now* have a driver's license has no bearing on whether the Thunderbird is her separate property. Third, I do not understand how borrowing his wife's car without permission on one occasion to run a personal errand makes Licensee an "owner" of that car. Finally, Licensee's access to his wife's car does not bestow ownership upon him, especially where, as here, Licensee did not even have his own set of keys.[7]

Inasmuch as I find *Bethea* and *Allen* to be inapplicable here, I would rest the outcome of this case on the statutory right of Licensee's wife to own separate property, to have the separate benefit and use of her earnings and to retain ownership of separate property which she owned prior to her marriage "as fully after her marriage as before." 48 P.S. §§ 32.1, 34, 64, 111; 23 Pa.C.S. § 3501.

As stated above, Licensee's wife owned a vehicle prior to her marriage, which, during her marriage, she sold and replaced with the Thunderbird. In order to preserve her singular ownership of the vehicle, Licensee's wife bought the Thunderbird in her own name, used funds from the sale of her old car, applied for the title in her own name, obtained financing in her own name, got automobile insurance in her own name, made the car payments out of her earnings and paid for her own insurance. Moreover, she worked two jobs to afford the car and never gave Licensee his own set of keys. It is clear to me from these facts that the Thunderbird is the separate property of Licensee's wife; thus, I cannot conclude that Licensee is an "owner" in any respect.

Because I believe that DOT failed to prove that Licensee is an "owner" of his wife's

---

6. Thus, the proceeds which Licensee's wife realized from the sale of the premarital car belonged to her. Indeed, under section 3 of the Act of June 8, 1893, P.L. 344, 48 P.S. § 111, Licensee's wife can sue Licensee to protect or recover such separate property.

7. There were two sets of keys to the Thunderbird; however, Licensee's wife usually kept both sets of keys in her purse. (R.R. at 25a.)

Thunderbird, I would affirm [8] the order of the trial court.

8. Because I would affirm, I would also address DOT's estoppel argument. DOT argues that, because Licensee pled guilty to a violation of section 1786(f) of the Vehicle Code, 75 Pa.C.S. § 1786(f), Licensee is estopped from contending that he is not an "owner" of his wife's Thunderbird. I disagree.

Section 1786(f) of the Vehicle Code provides that an "owner" shall not operate a motor vehicle without the required financial responsibility. A plea of guilty in a summary proceeding is not admissible as evidence in a civil matter arising out of the same violation except in proceedings which involve the suspension of a motor vehicle operating privilege. Section 6142 of the Judicial Code, 42 Pa.C.S. § 6142.

Here, however, Licensee pled guilty to section 1786(f) but testified that he did not fully understand the law. (R.R. at 42a.) We note that, in order for a guilty plea to be valid, it must be knowing and voluntary. Pa.R.Crim.P. 319(a). Moreover, our supreme court has noted that, in traffic violation cases, "expediency and convenience, rather than guilt, often control the defendant's 'trial technique.'" *Folino v. Young*, 523 Pa. 532, 536, 568 A.2d 171, 173 (1990), quoting *Hurtt v. Stirone*, 416 Pa. 493, 206 A.2d 624 (1965).

Here, DOT has presented no evidence to show that Licensee knew that section 1786(f) pertained to the "owner" of the vehicle. The title of the offense is simply "Operation of a motor vehicle without required financial responsibility." 75 Pa.C.S. § 1786(f). Indeed, DOT's own record of Licensee's conviction describes the offense as "Operation of Motor Vehicle Without Financial Responsibility." (R.R. at 60a.) Rule 53 of the Pennsylvania Rules of Criminal Procedure, relating to the contents of a citation, indicates that a citation shall include the section and subsection number of the offense and a summary of facts sufficient to advise the defendant of the nature of the offense charged. Because the citation itself is absent from the record here, I cannot determine whether Licensee was ever advised that he was being charged as an "owner."

Because DOT failed to demonstrate that Licensee knew that "ownership" was an element of section 1786(f), DOT's estoppel argument must fail.