**Rochelle SHIPLEY and John Shipley, Appellants**

v.

**TAX CLAIM BUREAU OF DELAWARE COUNTY.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 20, 2013.

Decided July 25, 2013.

---

7. Because we find in favor of Grane Hospice,     we need not address its second claim of error.

Earl Raynor, Philadelphia, for appellants.

Michael P. Dignazio, Media, for intervenor Guy LeRoy.

BEFORE: PELLEGRINI, President Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Rochelle Shipley and John Shipley[1] appeal from the Order of the Court of Common Pleas of Delaware County (trial court) that denied a Petition to Set Aside Judicial Tax Sale (Petition to Set Aside) of property located at 600 E. 9th Street, Chester, Pennsylvania (Property). The trial court held, in relevant part, that Mrs. Shipley, whose name did not appear on the Property's deed, did not have standing to challenge the judicial tax sale and that the Tax Claim Bureau of Delaware County (Bureau) satisfied the notice requirements of the Real Estate Tax Sale Law (Law).[2] On appeal, Mrs. Shipley argues that the trial court erred in holding that: she lacked standing to file the Petition to Set Aside because she is an equitable owner of the Property; and the Bureau satisfied the Law's strict notice requirements where there is no evidence of the Sheriff of Delaware County's (Sheriff) return receipt for the Rule to Show Cause. For the following reasons, we reverse.

Mr. Shipley purchased the Property in 1980 or 1981 and only his name is on the deed. Mr. and Mrs. Shipley were married at the time of the purchase. Together they operated a seafood store and a mechanical garage on the Property. Mrs. Shipley would pay the real estate taxes on the Property. Mr. and Mrs. Shipley resided at a Wildel Avenue address in New Castle, Delaware from 1978 until October, 2011, when Mrs. Shipley moved to Philadelphia, Pennsylvania. In 2011, Mr. Shipley lived at either the Wildel Avenue address or at a Hill Street address in Wilmington, Delaware until October 2011. Via certified mail dated March 9, 2010, the Bureau had a Rule to Show Cause sent to the Wildel Avenue address in New Castle, Delaware. The mail was returned to the Bureau as "Forwarding Time Expired, Moved Left No Address." (Trial Ct. Op. at 3.) Because the Bureau was notified that Mr. Shipley had filed for bankruptcy, the Bureau took no further action until July 26, 2011, when it sent Mr. Shipley, by certified mail to both the Wildel Avenue address and the Hill Street address, two letters indicating that it had been notified of the dismissal of Mr. Shipley's bankruptcy case and that the Property would be exposed to judicial sale on September 14, 2011. (Hr'g Tr. at 42, R.R. at 50.) The Hill Street letter was returned as "Return to Sender, No Such Number, Unable to Forward," and the Wildel Avenue letter was marked as "Return to Sender, Not Deliverable as Addressed, Unable to Forward." (Trial

---

1. Mr. Shipley's name appears on the Notice of Appeal; however, the Appellants' brief identifies only Mrs. Shipley as the Appellant.

2. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803. When a property does not sell at a tax upset sale, a tax claim bureau may file a petition with a trial court to sell the property at a judicial tax sale. Section 610 of the Law, 72 P.S. § 5860.610. The bureau's petition must be accompanied by evidence that it searched the record and ownership documents of the property and a list of all "tax and municipal claims, liens, mortgages, ground rents, charges and estates against" the property. *Id.* Once a tax claim bureau submits its petition to sell a property at a judicial tax sale, along with the supporting documents, the trial court will then grant a rule upon the interested parties "to appear and show cause why a decree should not be made" to allow the sale of the property free and clear of, *inter alia*, all claims, liens, or mortgages. *Id.*

Ct. Op. at 3.) The Bureau's Judicial Sale Coordinator (Coordinator) indicated that her office would search other property files for the same taxpayer to determine a useable address to try to notify property owners of upcoming tax sales. On December 14, 2011, the Bureau sold the Property to Guy Leroy (Purchaser) for $600 at a judicial tax sale, and Purchaser recorded his deed on January 4, 2012. (Trial Ct. Op. at 1–4.)

Mr. Shipley told Mrs. Shipley of the Property's sale in January 2012. On January 27, 2012, Mrs. Shipley filed the Petition to Set Aside, and Purchaser intervened. Mr. Shipley filed an Amended Petition to Set Aside (Amended Petition), joining Mrs. Shipley's challenge to the judicial tax sale on July 9, 2012, the date of the hearing before the trial court. At the hearing, Purchaser objected to Mrs. Shipley's standing and Mr. Shipley's filing of the Amended Petition and joining the matter as a party. Nevertheless, Purchaser agreed to allow the hearing to go forward with the addition of Mr. Shipley, but the trial court reserved its ruling on Purchaser's objections to Mrs. Shipley's standing and permitted Purchaser to argue against Mr. Shipley joining the matter. (Trial Ct. Op. at 1–2; Hr'g Tr. at 12, 16–19, R.R. at 20, 24–27.)

█ At the hearing, Mrs. Shipley acknowledged that her name was not on the deed and that she was not entitled to notice of the judicial sale. However, Mrs. Shipley's attorney asserted that Mrs. Shipley had a marital interest in the Property because it was purchased with joint funds and she had paid taxes on the Property, and that the Bureau did not properly serve

Mr. Shipley with notice of the judicial tax sale under the Law. The trial court denied the Petition to Set Aside and explained in its opinion filed pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a), that: (1) Mrs. Shipley did not have standing, but that the issue was moot because Mr. Shipley had been added to the Petition to Set Aside and they were asserting the same argument regarding notice; and (2) the Bureau's notices sent to Mr. Shipley at the two Delaware addresses via certified mail satisfied the notice requirements set forth in the Law. The trial court rejected the Shipleys' argument that the notice requirements of Section 602 of the Law, 72 P.S. § 5860.602, applied because Section 602 applied only to upset tax sales, not judicial tax sales. (Trial Ct. Op. at 4–6.) Mr. and Mrs. Shipley now appeal to this Court.[3]

Mrs. Shipley first argues that she has standing to challenge the judicial tax sale because she has an equitable ownership interest in the Property and she is aggrieved by the sale of the Property at the judicial tax sale. Purchaser responds that, notwithstanding these factors, Mrs. Shipley is not an owner of the Property as defined by the Law and, accordingly, was not entitled to notice of the judicial tax sale and does not have standing to file the Petition to Set Aside.[4]

Section 607 of the Law provides that objections or exceptions to a tax sale "may be filed by any owner or lien creditor." 72 P.S. § 5860.607; *see also Plank v. Monroe County Tax Claim Bureau*, 735 A.2d 178, 181 (Pa.Cmwlth.1999) (only an owner or a lien creditor at the time of the sale may

---

**3.** "Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law." *Plank v. Monroe*

*County Tax Claim Bureau*, 735 A.2d 178, 181 n. 6 (Pa.Cmwlth.1999).

**4.** The Bureau joins Purchaser's brief.

file objections or exceptions to a tax sale). Section 102 of the Law defines "owner" as

> the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property....

72 P.S. § 5860.102.[5]

■ "The traditional concept of standing focuses on the idea that a person who is not adversely impacted by the matter he seeks to challenge does not have standing to proceed with the court system's dispute resolution process." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 203, 888 A.2d 655, 659 (2005) (citing *William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269, 280–81 (1975) (plurality)). In other words, a person must be aggrieved or have a legally sufficient interest in a matter to have standing. As stated by our Supreme Court:

> an individual can demonstrate that he is aggrieved if he can establish that he has a substantial, direct, and immediate interest in the outcome of the litigation in order to be deemed to have standing. An interest is "substantial" if it is an interest in the resolution of the challenge which "surpasses the common interest of all citizens in procuring obedience to the law." Likewise, a "direct" interest mandates a showing that the

matter complained of "caused harm to the party's interest," i.e., a causal connection between the harm and the violation of law. Finally, an interest is "immediate" if the causal connection is not remote or speculative.

*Id.* at 204, 888 A.2d at 660 (citations omitted).

■ Mrs. Shipley does not meet the definition of "owner" as set forth in Section 102 of Law. She is neither the person whose name is on the registry nor the person whose name is on the deed. Therefore, for the purposes of notice under the Law, the Bureau was not required to provide notice to Mrs. Shipley of the impending judicial sale because she was not an owner whose name is on the deed. However, whether Mrs. Shipley had standing, as an equitable owner, to file the Petition to Set Aside pursuant to Section 607 of the Law is a question separate from whether she was entitled to notice.

Recently, this Court addressed whether non-record owners of a property subject to an upset tax sale had standing to file objections to the tax sale under Section 607 of the Law. *Husak v. Fayette County Tax Claim Bureau*, 61 A.3d 302, 309–10 (Pa. Cmwlth.2013). There, the owners acquired the subject property via a quitclaim deed in 2006, but did not record the deed until after the tax sale. *Id.* at 303–04. The purchasers argued that the owners lacked standing to file the objections because Fannie Mae was the record owner of the property at the time of the September 2010 tax sale and remained so until the owners recorded their quitclaim deed in March 2011. *Id.* at 307. The purchasers contended that, because the owners

5. In this definition, the phrase "and in all other cases" includes a county where deed registry laws do not apply. *In re Return of Sale of Tax Claim Bureau,* 366 Pa. 100, 104– 05, 76 A.2d 749, 752 (1950). Here, there is a deed; therefore, the "in all other cases" language does not apply.

were not "owners" as defined by Section 102, they could not file objections pursuant to Section 607 of the Law. *Id.* The trial court determined that, despite not recording their deed until after the sale, the owners were the actual owners of the property at the time of the tax sale; therefore, they were the only persons aggrieved by the tax sale. *Id.* at 305. Upon review, we agreed with the trial court that the owners had standing. We stated that, "[b]y purchasing the subject property back from Fannie Mae in April 2006 for $150,000 and receiving a quitclaim deed for it, Owners *acquired, at the very minimum, equitable title, a legally recognized interest in the subject property.*" *Id.* at 310 (emphasis added). "Consequently, they were clearly aggrieved for purposes of standing to challenge the tax sale." *Id.* Further, we distinguished the cases cited by the purchaser for the owners' purported lack of standing. *Id.* We pointed out that the objectors in those cases did not have an ownership interest in the property because, *inter alia,* they either deeded away the subject property prior to the tax sale or acquired an ownership interest after the tax sale. *Id.; see, e.g., First Horizon Home Loan Corporation v. Adams County Tax Claim Bureau,* 847 A.2d 774 (Pa.Cmwlth.2004) (mortgagee who was neither owner nor lienholder at time of tax sale, because it deeded the property to HUD prior to the tax sale, lacked standing to attack tax sale); *Appeal of Yardley,* 166 Pa.Cmwlth. 596, 646 A.2d 751 (1994) (only owners or lienholders may file objections to tax sale; shareholder of corporate property owner lacked standing to attack tax sale); *In re Petition of Crouthamel,* 48 Pa.Cmwlth. 507, 412 A.2d 645 (1980) (one who is neither owner nor lienholder on the date of tax sale lacks standing to object to

it; challenger did not acquire an ownership interest until after the tax sale).

Notwithstanding the fact that only Mr. Shipley's name was on the deed, Mrs. Shipley does have a legally recognized, equitable interest in the Property because it was purchased while she and Mr. Shipley were married. Section 3501(a) and (b) of the Divorce Code defines marital property as "all property acquired by either party during the marriage" and provides that there is a presumption that "[a]ll real or personal property acquired by either party during the marriage is ... marital property regardless of whether title is held individually or by the parties in some form of co-ownership." 23 Pa.C.S. § 3501(a), (b). The fact that the Property was purchased using joint funds supports Mrs. Shipley's equitable interest in the Property. *See Endy v. Endy,* 412 Pa.Super. 398, 603 A.2d 641, 646 (1992) (stating that, even though deed to property was delivered to one spouse after their separation, the use of marital funds to purchase the property rendered it marital property). One of the purposes of the concept of "marital property" is to restrict "the alienability of property held by a spouse solely in his or her own name." *Krenzelak v. Krenzelak,* 503 Pa. 373, 381, 469 A.2d 987, 991 (1983); see Section 3505(a) of the Divorce Code, 23 Pa.C.S. § 3505(a) (stating that a trial court may issue injunctions or attachments to prevent a spouse from disposing of, alienating, or encumbering property to defeat equitable distribution, alimony, spousal support or similar award); *Wayda v. Wayda,* 395 Pa.Super. 94, 576 A.2d 1060, 1068 (1990) (providing that *if* marital property is disposed of *in good faith* and used to *satisfy marital debt,* it is excluded when distributing marital property).[6]

---

**6.** One of the purposes of the Divorce Code is to "[e]ffectuate economic justice between par-

ties who are divorced or separated and ... insure a fair and just determination and set-

Moreover, in addition to a contingent equitable distribution interest, there are other indicia of Mrs. Shipley's ownership of the Property. Notably, Mr. Shipley used joint funds when he purchased the Property, Mrs. Shipley paid taxes on the Property, Mrs. Shipley contributed to the maintenance of the Property, and Mrs. Shipley operated a business on the Property. Given these factors, Mrs. Shipley had an equitable ownership interest in the Property, as discussed above, before the tax sale.[7] Therefore, while the Bureau was not required to provide Mrs. Shipley with notice of the judicial tax sale in accordance with the Law's notice provisions, pursuant to Section 607 of the Law and this Court's decision in *Husak,* she had standing to challenge the judicial tax sale of the Property. Accordingly, the trial court erred by holding otherwise.[8]

Having concluded that Mrs. Shipley had standing to file the Petition to Set Aside, we now consider her argument that the trial court erred in finding that the Bureau satisfied the Law's notice requirements because, *inter alia,* there is no evidence of a Sheriff's return receipt for the Rule to Show Cause as required by Section 611 of the Law, 72 P.S. § 5860.611.[9] Purchaser asserts that, because the Bureau introduced evidence that it sent, via certified mail, the Rule to Show Cause and two other letters regarding the judicial tax sale to Mr. Shipley at his last known address, the Bureau satisfied the notice requirements of Section 611 of the Law.

■ Section 611 governs service of the Rule to Show Cause and states, in pertinent part:

> If service of the rule cannot be made in this Commonwealth, then the rule shall be served on the person named in the rule by the sheriff, by sending him, by registered mail, return receipt requested, postage prepaid, at least fifteen (15) days before the return day of the rule, a true and attested copy thereof, ad-

---

tlement of their property rights." Section 3102(a)(6) of the Divorce Code, 23 Pa.C.S. § 3102(a)(6).

7. Pennsylvania courts have considered the Divorce Code's definition of "marital property," along with other indicia of ownership, as creating an ownership interest in matters unrelated to domestic law. In *Bethea v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 407 Pa.Super. 57, 595 A.2d 122 (1991), the wife of the registered owner of an uninsured motor vehicle, registered only in the husband's name, sought uninsured motorist benefits under an assigned claims plan. *Id.* at 123. Although the Superior Court held that more than a "mere contingent equitable distribution" interest was necessary to find ownership and that it would look to other indicia of ownership, it did conclude that it must consider property rights that have their genesis in the marital relationship in determining whether the spouse was an "owner" of the uninsured vehicle and, therefore, excluded from collecting uninsured motorist benefits because such rights are legally recognizable and enforceable. *Id.* at 125–26.

8. Our conclusion that Mrs. Shipley had standing effectively renders the issue of whether Mr. Shipley was properly added as a plaintiff to the Petition to Set Aside moot.

9. Mrs. Shipley also argues that: (1) the Bureau failed to comply with the notice requirements of Section 602 of the Law; (2) there was no tax sale date on the Rule to Show Cause; and (3) there is no evidence that the Rule to Show Cause was mailed at least fifteen days before the return date of the Rule. These arguments are without merit, however, because: (1) it is well settled that Section 602 applies to *tax upset sales,* not judicial tax sales, *In re Serfass,* 651 A.2d 677, 679 (Pa. Cmwlth.1994); (2) there is no requirement that the landowner have actual notice of the date of the judicial tax sale, *id.;* and (3) the certified record includes the Rule to Show Cause sent by registered mail on March 9, 2010 to Mr. Shipley's Wildel Avenue address, his last known address, which identified the hearing date as March 26, 2010, seventeen days later, (Rule to Show Cause).

dressed to such person's last known post office address. *The sheriff shall attach to his return,* the return receipts, and if the person named in the rule has refused to accept the registered mail or cannot be found at his last known address, shall attach evidence thereof. This shall constitute sufficient service under this act.

72 P.S. § 5860.611 (emphasis added). The notice requirements for judicial tax sales are less onerous than those for upset tax sales, *In re Serfass,* 651 A.2d 677, 679 (Pa.Cmwlth.1994); however, they must be strictly complied with, *Manufacturers and Traders Trust Co. v. Luzerne County Tax Claim Bureau,* 56 A.3d 36, 39 (Pa.Cmwlth. 2012).

■ Missing from the record certified to this Court is a return from the Sheriff for the Rule to Show Cause sent to Mr. Shipley. Mrs. Shipley's counsel asked the Coordinator whether there was a Sheriff's return or certified receipts in the Property's files. (Hr'g Tr. at 37–38, R.R. at 45–46.) The Coordinator testified that there were returned envelopes and certified mail receipts in the folder, but did not mention a Sheriff's return. (Hr'g Tr. at 38, R.R. at 46.) Accordingly, there is no evidence that the Bureau's service of notice to Mr. Shipley complied with Section 611 of the Law. Purchaser alternatively relies upon the two certified *letters* stating the Property would be sold at judicial tax sale, which the *Bureau* sent in July 2011 to Mr. Shipley's Wildel Avenue and Hill Street addresses, to establish that the Bureau properly

served Mr. Shipley. However, these letters are not *Rules to Show Cause* that were sent via certified mail by the Sheriff and, therefore, do not constitute proper service under Section 611 of the Law.[10]

Accordingly, we reverse the trial court's Order.

### ORDER

**NOW,** July 25, 2013, the Order of the Court of Common Pleas of Delaware County entered in the above-captioned matter is hereby **REVERSED.**

---

10. We further note that the Rule to Show Cause included in the record contains certain deficiencies that raise some questions about its validity. The Rule to Show Cause was addressed to a "John S. Clayton," who resided at the Wildel Avenue address; although it stated that the properties subject to judicial tax sale were set forth in Exhibit "A," no such exhibit was included; the only additional item with the Rule to Show Cause is a letter from the Bureau, dated February 19, 2010, indicating that "Clayton John S. C/O John Shipley" may have an interest in property that was going to be sold in a judicial tax sale; this letter does *not* identify the Property, but a different property at a different tax folio number. Although we point out these deficiencies, Mrs. Shipley does not raise any of them as a reason to set aside the judicial tax sale of the Property.