# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Tax Claim Bureau of Columbia : 
County 2023 Real Estate Tax Sale : 
: No. 406 C.D. 2024
: 
Appeal of: Michael Lamoreaux : Argued: December 9, 2024

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE WOLF                    FILED: January 7, 2025

Michael Lamoreaux (Lamoreaux) appeals from an order of the Court of Common Pleas of the 26th Judicial District, Columbia County Branch (trial court), dated March 13, 2024, which denied and overruled Lamoreaux's objections and exceptions to an upset tax sale. The trial court held that the Columbia County Tax Claim Bureau (Bureau) proved sufficient notice of the sale in compliance with Section 602(e)(1) of the Real Estate Tax Sale Law (RETSL).[1] We reverse.

Lamoreaux owned, together with his brother Christopher Lamoreaux as tenants in common, the property located at 557 Winding Road, Orangeville, Fishing Creek Township, Columbia County, Pennsylvania (Property). The Property was listed and sold at the Columbia County Upset Tax Sale held September 11, 2023 (Tax Sale). The successful bidder at the Tax Sale was Kyle Watkins (Watkins, and together with the Bureau, Appellees).

Michael Lamoreaux[2] filed objections and exceptions to the

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.602(e)(1).

[2] Christopher Lamoreaux did not file objections or exceptions and did not join in this litigation.

consolidated return of the Tax Sale within the timeframe permitted under RETSL.[3] Lamoreaux argued that notice of the sale was legally deficient under RETSL. The trial court held an evidentiary hearing on February 12, 2024.

At the hearing, the Bureau presented the testimony of Renae Newhart, Deputy Assessor for Tax Assessment and Tax Claim Bureau. Reproduced Record (R.R.) at 90a. Newhart explained that before the Tax Sale was scheduled, the Bureau sent notices of return and claim for the Property for tax years 2022 and 2023 via certified mail, as required by Section 308 of RETSL, 72 P.S. § 5860.308. The Bureau introduced copies of those notices of claim and certified mail receipts for tax years 2022 and 2023, which were admitted as exhibits T1 and T2, respectively. Newhart testified that the 2022 notice was signed for with the letters "ML," followed by what "looks like a 'C14.'" *Id.* at 95a; *see id.* at 37a (Ex. T1). She later stated that she was "not sure what number" the receipt showed and that it could be "C19" for "COVID[-]19." *Id.* at 112a. The signature box for the 2023 notice of claim (Ex. T2) contains what appear to be three horizontal lines. *Id.* at 39a (Ex. T2). Newhart explained that the Bureau later sent notice of the scheduled Tax Sale to Lamoreaux at the same address, by certified mail, restricted delivery, as required by Section 602(e)(1) of RETSL, 72 P.S. § 5860.602(e)(1). R.R. at 100a-01a, 119a. The Bureau introduced a copy of that notice and related return receipt as Exhibit T3. The signature box for Exhibit T3 appears to contain two horizontal lines. *Id.* at 102a; *id.* at 41a (Ex. T3).

Newhart testified that the certified mail signatures or markings for the 2023 notice of claim (Ex. T2) and the rest of the Bureau's mailings to Lamoreaux (including Exhibit T3, the notice of sale) were illegible and she could not identify

---

[3] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101-.803.

the person who had signed for receipt. *Id.* at 112a-13a. The remainder of the notices in evidence (which includes some notices sent to Christopher Lamoreaux) bear two horizontal lines in the recipient signature box, similar to those on Exhibit T3. *Id.* at 43a, 51a, 53a. The Bureau had used the same address for all notices mailed to Michael Lamoreaux: 408 Hardman Lane, Warminster, Pennsylvania, 18974. *Id.* at 93a. Newhart admitted that the Bureau did not perform any additional notification or location efforts beyond the mailed notices in evidence. *Id.* at 113a. The Bureau did not send a first-class mail notice to either owner, as would be required if the certified mail return receipt had not been received for either owner. *Id.* at 123a; *see* Section 602(e)(2) of RETSL, 72 P.S. § 5860.602(e)(2).

Lamoreaux presented his own testimony that he did not receive either of the two notices of claim, nor the notice of sale (Exhibits T1, T2, and T3, respectively). R.R. at 126a. He stated that it was "not [his] signature" on those return receipts. *Id.* He stated he has lived at 408 Hardman Lane since 2010, and he did receive a tax notice there in 2021. *Id.* at 128a-29a. His ex-wife and son live at that address with him. *Id.* at 132a.

The trial court ultimately did not credit Lamoreaux's testimony that he did not sign the return receipts for the notices of claim and the notice of the sale. The trial court acknowledged that the "signatures" on most were just "two horizontal lines," R.R. at 4a, but opined that legibility is not required, only that whomever signed was an authorized agent, R.R. at 5a. The trial court concluded that the similarity between the horizontal lines on most of the return receipts, together with the presumption of regularity of the United States Postal Service's restricted-delivery procedures, showed that the horizontal lines were Lamoreaux's signature. On that basis, the trial court reasoned that the Bureau had fully complied with

3

Section 602(e)(1) of RETSL, so no further efforts to locate or notify Lamoreaux were necessary, and service was proper. The trial court thus denied and overruled Lamoreaux's objections and exceptions. This appeal followed.

On appeal,[4] Lamoreaux raises essentially two issues. First, he challenges the trial court's finding that the Bureau complied with RETSL's notice requirement. Second, he argues that the sale is void due to the failure of proper notice to him, and thus must be set aside in its entirety, including as to his brother's interest.

Regarding compliance with RETSL's notice requirements, Lamoreaux argues that the horizontal lines marked on the return receipt for the notice of sale sent to him (Exhibit T3) do not constitute signatures, and that the trial court's reliance on presumptions improperly shifted the burden of showing proper notice from the Bureau to Lamoreaux. Appellees[5] acknowledge that the horizontal lines on the return receipts are "primitive" and "difficult to read" but maintain that they are signatures, such that the Bureau was not required to take further notification efforts under Section 602(e)(2) or Section 607.1 of RETSL.[6] Appellees' Br. at 28, 32. They argue that adopting Lamoreaux's position would impose an undue burden on tax claim bureaus to scrutinize the form and content of a recipient's signature, without the benefit of a sample signature on file for comparison.

For a tax sale to be valid, due process requires notice to the owner of the property, and Section 602 of RETSL provides for that notice by publication,

---

[4] Our review in tax sale cases "is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law." *Shipley v. Tax Claim Bureau of Del. Cnty.*, 74 A.3d 1101, 1104 n.3 (Pa. Cmwlth. 2013) (quoting *Plank v. Monroe Cnty. Tax Claim Bureau*, 735 A.2d 178, 181 n.6 (Pa. Cmwlth.)).

[5] The Bureau and Watkins filed a joint brief in this appeal.

[6] Added by the Act of July 3, 1986, P.L 351, 72 P.S. § 5860.607a.

4

posting on the property, and certified mail. *Williams v. Cnty. of Monroe*, 303 A.3d 1098, 1100 (Pa. Cmwlth. 2023), *reargument denied*, (Oct. 16, 2023). Section 602(e) requires the Bureau to give notice of the scheduled upset sale

> (1) [a]t least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner . . . [and]
>
> (2) [i]f return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the [tax] bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the [tax] bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. § 5860.602(e). To satisfy the certified-mail requirement of Section 602(e)(1), "the notice must be signed for on behalf of the personal addressee or someone with authorization." *Williams*, 303 A.3d at 1101 (quoting *Est. of Smith v. Pike Cnty. Tax Claim Bureau* (Pa. Cmwlth., No. 841 C.D. 2011, filed Dec. 19, 2011) (*Smith II*), 2011 WL 10844286, slip op. at 7[7]). Provided that a signer is actually authorized, the Bureau need not "inquire behind a signature to determine whether it is genuine." *Id.*

However, "that principle applies only where a signature is actually present" on the return receipt. *Id.* Where a signature is not present, the Bureau must do more. Section 607.1 of RETSL provides:

---

[7] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

5

When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, *and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee* or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the [tax] bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The [tax] bureau's efforts shall include, *but not necessarily be restricted to*, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed.

72 P.S. § 5860.607a (emphasis added). "[I]n essence, [RETSL] requires additional notification efforts when circumstances raise significant doubt as to personal receipt by the owner." *Williams*, 303 A.3d at 1101 (quoting *Smith II*, slip op. at 11). The Bureau bears the burden of showing adequate notice under whatever RETSL provision is applicable, whether by certified mail, first class mail, or other reasonable efforts under Section 607.1. *See id*.

The trial court gave two reasons that the lines marked on Exhibit T3 constitute a signature. First, it relied on the fact that other mailings to Lamoreaux bore similar markings, and that Lamoreaux had admitted that he received at least one of those mailings (Ex. T8), thus drawing the inference that Lamoreaux routinely

6

signed for mailings by marking two horizonal lines. But this is not supported by the record. Neither Lamoreaux's testimony nor any other part of the record that we can discern contains an admission or other evidence that Lamoreaux received any of the tax-sale-related mailings, including Exhibit T8 that the trial court specifically relied on.[8] So the trial court's analogy between similar markings on different notices does not support that the markings on Exhibit T3 are Lamoreaux's signature.

Second, the trial court presumed the regularity of the Postal Service's restricted-delivery process, and thus assumed that the addressee signed the mailing by writing two horizontal lines. But that presumption is inconsistent with our holding in *Williams* that notations conceivably or admittedly made by the Postal Service may not constitute signatures. *See Williams*, 303 A.3d at 1103 (citing *Smith II*, slip op. at 7). Handwritten initials together with the phrase "COVID-19" cannot

---

[8] The trial court stated in its opinion:

> [Lamoreaux] admits having received the post-sale notice, Ex[hibit T8] . . . . The illegible electronic signature on Ex[hibit T8] appears as two [] horizontal lines. Likewise, the electronic signature on [Exhibit T3] appears as two [] horizontal lines . . . . We circumstantially find as a fact that the same person signed both in the same manner. Due to the distinct similarities of the "signatures" (two horizontal lines), since [Lamoreaux] admitted that he received Ex[hibit T8] (the post-sale notice which [Lamoreaux] admits he signed for on September 14, 2023), we find that he also received Ex[hibit T3] (the pre-sale notice) . . . .

R.R. at 4a. The trial court did not cite the record regarding Lamoreaux's receipt of Exhibit T8. His testimony contains no such admission, which Appellees acknowledge. *See* Appellees' Br. at 30. Nor do we find that admission in Lamoreaux's objections and exceptions or his other filings. There is a similar admission in the record, but it is by a different owner relative to the sale of an unrelated property in Jackson Township. *See* Original Record, Item No. 8 (Objection Petition of Darlene Morris) ¶ 14 ("Petitioner received a WARNING notice from [the Bureau] dated September 12, 2023, advising her that her property had been sold at a tax sale on September 11, 2023 for the collection of delinquent taxes."). It is not clear why that unrelated objection petition was attached to the trial court's scheduling order in this matter, and thus included in the Original Record. The unrelated property appears to have been sold at the same upset tax sale in Columbia County on September 11, 2023. R.R. at 47a.

7

constitute a signature given the way restricted delivery is known to operate. *See id.* On the same reasoning, two parallel lines also do not obviously constitute a signature and do not deserve a presumption that they were made by the addressee, as opposed to a postal worker. Instead of assuming regularity by Postal Service officials when confronted with lines that might or might not be a signature, it was incumbent on the Bureau to "undertake[ the] . . . common sense effort of contacting the appropriate postal employee to determine whether the notation on the return receipt constituted sufficient proof of notice to [Lamoreaux]." *Id.*

Thus, on this record, the trial court erred in concluding that the horizontal lines printed on the return receipts so clearly constituted signatures that no further action was required of the Bureau. This depends not merely on what can constitute a signature in the abstract, but more closely on the duty of investigation that Section 607.1 of RETSL places on the Bureau. As we said in *Williams*, "the sufficiency of the Bureau's evidence of notice hinges on whether 'the mailed notification [was] either returned without the required receipted personal signature of the addressee *or under other circumstances raising a significant doubt* as to the actual receipt of such notification by the named addressee.'" 303 A.3d at 1102 (quoting Section 607.1) (emphasis added). A mark that is not clearly a signature, such as what appears to be a set of horizontal lines, raises a significant doubt about whether the notice was delivered directly to the addressee. *Id.* We conclude that the Bureau did not sustain its burden of showing proper notice of the Tax Sale under RETSL, and accordingly the Tax Sale must be set aside.

The Court's recent unreported en banc decision in *Theodore Canton, LLC v. Dauphin County Tax Claim Bureau*, (Pa. Cmwlth, No. 496 C.D. 2023, filed Nov. 21, 2024) (en banc), 2024 WL 4847408, does not compel or counsel a different

8

result. First of all, *Theodore Canton* was not reported so it is not authoritative. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a), (c). Although appropriate to consider in the context of this case, it is also readily distinguishable and thus not dispositively persuasive.

In *Theodore Canton*, the return receipt contained a signature, though it was illegible and without a printed name or other indication of the signer's identity. *Theodore Canton*, slip op. at 3-4. To address that situation, the Court considered two of our reported decisions regarding signatures (or the lack thereof) on return receipts. The first was *Williams* which, as discussed *supra*, held that a printed name and note were not a signature at all. Because the markings were not a signature, they left a significant doubt that the addressee had received the mailing and required further efforts by the tax claim bureau to effect notice. *Williams*, 303 A.3d at 1102. The second case was *FS Partners v. York County Tax Claim Bureau*, 132 A.3d 577 (Pa. Cmwlth. 2016), where the return receipt contained what appeared to be the legible signature of the addressee. *Id.* at 582-83. The addressee later testified that it was not his signature, but we held that this did not matter because the signature appeared to the tax claim bureau to be that of the proper addressee. *Id.* In *FS Partners*, we held that as long as the return bears the apparent *and legible* signature of the owner or its authorized agent, that satisfies the tax claim bureau's notice burden under Section 602(e)(1). *Id*.

Having discussed those two cases, we opined in *Theodore Canton* that the presence of a signature made that case more similar to *FS Partners*—where a signature was also present—than to *Williams*, where "the return receipt did not have *any* signature." *Theodore Canton*, slip op. at 9 (emphasis in original). We also observed that because the property owner was a business entity rather than a natural

9

person, the return receipt would necessarily be signed by an authorized agent, making it more likely that the signature would be unrecognizable to the tax claim bureau. *Id.* We concluded that the trial court permissibly found that the signature was that of an authorized agent. *Id.*[9]

We find *Theodore Canton* unpersuasive here for two reasons. First, no party in *Theodore Canton* argued that the marking there was not a signature at all. That is precisely what Lamoreaux argues here. As we concluded *supra*, the sets of horizontal lines on the returns in the instant case are more like the markings in *Williams* than they are like the apparent signatures in *FS Partners* and *Theodore Canton*. Even if those lines could conceivably be a signature, from the viewpoint of the Bureau at the time, they leave a significant doubt as to personal receipt. *See Williams*, 303 A.3d at 1102. They are at least as likely to be some other sort of marking like the markings made by the Postal Service in *Williams*, so they required further action by the Bureau. *Id.* Second, Lamoreaux is an individual, not a business entity, so the rationale that the signer for a business entity is more likely to be unknown to the Bureau is not present here like it was in *Theodore Canton*. To the extent we need to distinguish that nonbinding decision, we distinguish it.

Finally, having concluded that we must reverse the trial court's determination that proper notice was given, we consider the effect of that conclusion on each owner's interest. Lamoreaux argues that because the notices to him were

---

[9] Judge McCullough authored a dissenting opinion in *Theodore Canton*, in which Judge Wallace joined. Judge McCullough posited that even for business-entity owners, to satisfy due process, the Section 602(e)(1) signature must be printed and legible to confirm that an owner or authorized agent actually received notice. *Theodore Canton*, slip op. at 3-7 (McCullough, J., dissenting). She opined that the *Theodore Canton* majority had impermissibly applied a novel presumption that any signature, even if illegible, is good enough, and had thus departed from our prior rule—expressed in both *FS Partners* and *Williams*—that a *legible* signature is required so that the agent can be identified. *Id.*

10

deficient, the Tax Sale itself is invalid and must be set aside, even though the Property's other owner—Christopher Lamoreaux—did not raise his own challenge to the Tax Sale. Appellees respond that because he holds the Property in a tenancy in common with his brother, Lamoreaux's objections and exceptions cannot be used to set aside the sale as to his brother.

"If any of the three types of notice [required under RETSL] is defective, the tax sale is void." *Citimortgage, Inc. v. KDR Invs., LLP*, 954 A.2d 755, 758 (Pa. Cmwlth. 2008). The absence of lawful notice "constitutes a lack of authority to make the sale," so the effect is to set aside the sale in its entirety and require a new, procedurally proper sale. *Twp. of Concord v. Aiello* (Pa. Cmwlth., No. 243 C.D. 2016, filed Dec. 5, 2016), 2016 WL 7048051, slip op. at 8. Although *Aiello* dealt with a sheriff's sale rather than an upset sale, we held that one owner could raise failed notice to other owners as a basis to set aside the sale. *Id.*, slip op. at 6-7. We relied on an earlier reported decision, where we held that because all owners in common have an interest in the property as a whole, a sale affects all of them, so failed notice to any of them requires that "[t]he sale must be invalidated." *Appeal of Marshalek*, 541 A.2d 398, 401 (Pa. Cmwlth. 1988). Here, the failed notice to Lamoreaux requires the sale to be set aside in its entirety as to all parties, whether or not other parties filed their own objections.

Accordingly, we reverse the trial court's order.


_____
MATTHEW S. WOLF, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Tax Claim Bureau of Columbia   :
County 2023 Real Estate Tax Sale     :
        :   No.  406 C.D. 2024
        :
Appeal of: Michael Lamoreaux     :

## **O R D E R**

AND NOW, this 7th day of January, 2025, the March 13, 2024 order of the Court of Common Pleas of the 26th Judicial District, Columbia County Branch, is REVERSED.

_____
MATTHEW S. WOLF, Judge