# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: 2023 Erie County Tax Sales : 
Re: Jermaine L. Hunter, record owner : 
Index No. 14-010-040.0438.00 : 
                                    : No. 982 C.D. 2024
Appeal of: Jermaine L. Hunter : Argued: May 6, 2025

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

OPINION BY JUDGE WOLF                          FILED: June 2, 2025

Before a county can sell a taxpayer's home for back taxes under the Real Estate Tax Sale Law (RETSL),[1] the owner is entitled to be personally served with notice of the sale. Section 601(a)(3) of RETSL[2] allows only three persons to make personal service on owner occupants—the county sheriff, his deputy, or another person appointed by "the county commissioners, by resolution." *Id.*

In this case, we consider whether Erie County (County) duly appointed Palmetto Posting, Inc., a South Carolina corporation (Palmetto), to give the personal service that Section 601(a)(3) requires. The County has adopted home rule and does not have county commissioners. It purported to make the appointment through its County Executive instead. Jermaine L. Hunter (Hunter) appeals from the June 28, 2024 order of the Court of Common Pleas of Erie County (trial court) that dismissed his objections and upheld the upset tax sale of his home. We conclude that Palmetto was not lawfully appointed, so Hunter did not receive the personal service to which

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-.803.

[2] 72 P.S. § 5860.601(a)(3).

he was entitled and the sale was unlawful.  Accordingly, we reverse.

Hunter and his former spouse owned and resided at 507 Dunn Boulevard in the City of Erie (Property).  After they divorced in 2020, both retained an ownership interest in the Property and Hunter continued to reside at the Property.  The Erie County Tax Claim Bureau (Bureau) listed and sold the Property at the Erie County Upset Tax Sale held September 26, 2023 (Tax Sale).

The trial court confirmed the Tax Sale *nisi*.[3]  Hunter timely filed a petition to set aside in the trial court raising objections and exceptions to the Tax Sale.  He claimed that the Bureau had not given notice of the sale as RETSL requires.

The trial court held an evidentiary hearing on June 3, 2024.  The Bureau presented the testimony of Steven Letzelter, its recently retired supervisor.  Relevant to the issue on appeal, he testified that the Bureau contracts with Palmetto to give personal service where required.  Reproduced Record (R.R.) at 22a.  He indicated Palmetto was appointed to that role by letter from the County Executive sent to the Bureau.  *Id.* at 22a-23a.  The Bureau also presented testimony from John O'Shaunghessy, a Palmetto employee who testified that he personally served Hunter and posted the Property before the Tax Sale.  *Id.* at 38a, 46a.  O'Shaunghessy admitted on cross-examination that he has been convicted in South Carolina of swindling[4]—a misdemeanor crime of dishonesty—and that his testimony had been

---

[3]  Under Section 607 of RETSL, 72 P.S. § 5860.607, the trial court makes a preliminary "confirmation *nisi*" of tax sales. This starts the period during which parties can file objections or exceptions to the sale. *Id.*  "*Nisi*" means "unless," so this is a confirmation unless an interested party (like a property owner) comes into court and shows why the sale was improper. *See Adams Twp. v. Richland Twp.*, 154 A.3d 250, 259 n.11 (Pa. 2017).  If no objections or exceptions are filed, or if they are filed and the trial court overrules them, the sale is "confirmed absolutely," that is, finally.   Section 607(g) of RETSL, 72 P.S. § 5860.607(g).

[4] *See* S.C. Code Ann. § 16-13-320.

found not credible by the trial court in an earlier tax sale case in Erie County. *Id.* at 53a, 56a. Hunter testified on his own behalf that he was not personally served and had never seen O'Shaunghessy. *Id.* at 59a.

The Bureau introduced the letter purporting to appoint Palmetto. R.R. at 105a. Dated April 28, 2023, the letter is from Erie County Executive Brenton Davis and states in relevant part: "I designate [Palmetto] to make personal service of written notices of tax sales upon the owner occupant(s) of owner-occupied real property." *Id.* The letter cites the County's Home Rule Charter[5] and Section 601(a)(3) of RETSL as bases for the appointment.

The trial court dismissed Hunter's petition and confirmed the Tax Sale. *See* Original Record, Item No. 55 (June 28, 2024 Opinion and Order) at 5. It credited O'Shaunghessy's testimony over Hunter's and concluded Hunter was personally served as Section 601(a)(3) of RETSL requires. *Id.* at 3-4. The trial court rejected Hunter's argument about the procedural defect in the appointment of Palmetto. *Id.* at 3 n.2. It relied only on an earlier (apparently unreported) decision of the trial court and our unreported affirmance thereof. *See id.* (citing *In re 2021 Erie County Tax Sales* (Pa. Cmwlth., No. 1149 C.D. 2022, filed April 18, 2024), slip op. at 15, 2024 WL 1664808 (hereinafter *Appeal of Bissell*)).[6]

On appeal,[7] Hunter raises a single, novel question: When a person other

---

[5] The Charter is available at https://eriecountypa.gov/wp-content/uploads/2017/06/home-rule-charter-10-03-2017.pdf (last visited May 30, 2025). A copy of the Charter is attached to the Bureau's Brief as Appendix A.

[6] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

[7] Our review in tax sale cases determines "whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law." *Shipley* **(Footnote continued on next page…)**

3

than the sheriff is appointed to make personal service under Section 601(a)(3) of RETSL, may the appointment be by the County Executive and by letter, despite that Section 601(a)(3) authorizes appointment by "the county commissioners, by resolution"? We have discussed this question in earlier cases—including *Appeal of Bissell*, on which the trial court here relied—but have never decided it.[8]

This is an issue of statutory interpretation, "a question of law, as to which our standard of review is *de novo* and our scope of review plenary." *Commonwealth v. Crosby*, 329 A.3d 1141, 1148-49 (Pa. 2025). We apply the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501-1991, under which the object of interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921. "The best indication of the General Assembly's intent is the plain language of the statute." *Brewington v. City of Phila.*, 199 A.3d 348, 354 (Pa. 2018). When words or phrases are not defined in the statute or in the Statutory Construction Act, we give them "their common and approved usage." *Ursinus Coll. v. Prevailing Wage Appeals Bd.*, 310 A.3d 154, 171 (Pa. 2024) (quoting 1 Pa.C.S. § 1903(a)). We do not add or subtract words or presume to redo

---

*v. Tax Claim Bureau of Del. Cnty.*, 74 A.3d 1101, 1104 n.3 (Pa. Cmwlth. 2013) (quoting *Plank v. Monroe Cnty. Tax Claim Bureau*, 735 A.2d 178, 181 n.6 (Pa. Cmwlth. 1999)).

[8] "Section 601(a)(3) permits a tax bureau to seek a waiver of the personal service of notice requirement from a court of common pleas." *In re Consol. Reps. & Return by Tax Claims Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 649 (Pa. Cmwlth.) (en banc) (hereinafter *Appeal of Neff*), *appeal denied*, 141 A.3d 482 (Pa. 2016).

In cases where the trial court granted a waiver, we have expressly declined to reach the issue of lawful appointment even where it was presented. *See id.* at 652; *Appeal of Bissell*, slip op. at 14-15 & nn.14-15. Thus, the trial court's reliance on our decision in *Bissell* was misplaced, since our affirmance there was on a different ground. This case does not involve a waiver request so the appointment issue is unavoidable.

the General Assembly's drafting. *See id.* Only when the text of a statute is ambiguous may we look beyond the text to other indicia of legislative intent, such as those listed in Section 1921(c) of the Statutory Construction Act.[9] *Ursinus College*, 310 A.3d at 171. "We may not look beyond the plain meaning of the statute 'under the pretext of pursuing its spirit.'" *Brewington*, 199 A.3d at 354 (quoting 1 Pa.C.S. § 1921(b)).

Section 601(a)(3) of RETSL provides:

> No owner-occupied property may be sold unless the bureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose *unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause*. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting forth the name of the person served, the date and time and place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners

72 P.S. § 5860.601(a)(3) (emphasis added). "'County commissioner'[] includes the equivalent official in home rule counties." Section 102 of RETSL (definitions), 72

---

[9] It provides that "when the words of the statute are not explicit," the intention of the General Assembly may be ascertained by considering "(1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such statute." 1 Pa.C.S. § 1921(c).

P.S. § 5860.102.

Hunter argues that Section 601(a)(3) unambiguously requires the appointment in question to be made by formal resolution, not by letter as occurred here. On his view, Palmetto was not authorized, in the manner the statute provides, to make personal service so it cannot have properly served him. He acknowledges that Erie County has adopted home rule and no longer has county commissioners. But he points out that the Charter authorizes the County Council, not the County Executive, to pass resolutions in written form with reasonable notice and presentment to the County Executive. *See* Hunter's Br. at 12 (citing Charter, Art. II, §§ 3(B)(1), (D)(1)). Hunter does not cite RETSL's definition of "county commissioner" to include equivalent home rule officials.

The Bureau essentially asks us to adapt RETSL's language to account for home rule governance by revising how appointment can occur, and by whom. It bases that request on what it perceives to be RETSL's statutory history vis-à-vis the Charter. It claims "the need for a resolution of county commissioners dates from the original enactment of [RETSL in] 1947," and that the Charter was adopted later in 1976. Bureau's Br. at 18-19. Based on that historical view, the Bureau asks us to treat the Charter as essentially a later-in-time enactment that should modify RETSL and allow the County Executive to exercise the appointment function previously given to the county commissioners. It asserts, without explanation or citation to authority, that the appointment is an executive or administrative function that the Charter vests in the Executive, not a legislative one for the Council. The Bureau, like Hunter, fails to note RETSL's careful definition of "county commissioner."

We reject the Bureau's argument and agree with Hunter. Start with the text, "read in context with the overall statutory framework in which it appears."

6

*Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1073 (Pa. 2018). This "whole-text canon" acknowledges that different parts of a statute often depend on or refer to one another and can only be understood together. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012). Statutory definition is a type of context. "A legal text referring to a statutorily defined term is understood to have a silent gloss, 'as the definition may be amended from time to time.'" *Id.* at 90. So we consider how the legislature has changed the statute's language or definitions over time. This is a textual enterprise, not legislative history:

> [L]egislative history . . . consists of the hearings, committee reports, and debate leading up to the enactment in question. But quite separate from legislative history is *statutory* history—the statutes repealed or amended by the statute under construction. These form part of the context of the statute and—unlike legislative history—can properly be presumed to have been before all the members of the legislature when they voted. So a change in the language of a prior statute presumably connotes a change in meaning.

*Id.* at 256 (emphasis in original) (citation omitted).

The Bureau has the statutory history backward. The requirement for personal service before sale was *not* part of RETSL as initially enacted in 1947. *See* Sections 403 and 601 through 617 of the Act of July 7, 1947, P.L. 1368 (addressing owner occupancy only regarding writs for possession, not regarding sale), *formerly* 72 P.S. §§ 5860.403, .601-17 (subsequently amended). It was first added by amendment in 1980, four years *after* the County adopted home rule. *See* Sections 1 and 4 of the Act of July 10, 1980, P.L. 417 (respectively, adding definition of "owner occupant" and amending Section 601(a) to require personal service on owner occupants 10 days before sale), *formerly* 72 P.S. §§ 5860.102, .601(a) (subsequently

7

amended). At first, only "the sheriff or his designee" was authorized to make personal service so there was no appointment problem. *Id.* § 4. Six years later, the General Assembly added another class of persons who can make personal service on owner occupants: those authorized by "the county commissioners, by resolution."[10] *See* Section 24 of the Act of July 3, 1986, P.L. 351 (amending and renumbering Section 601(a)(3) in its current form). In that same enactment, the legislature also amended RETSL to address home rule. It added new definitions to that effect for "County" (to "include[] counties which have adopted or may adopt home rule charters") and "county commissioner" (to "include[] the equivalent official in home rule counties"). *Id.* § 1 (amending Section 102 of RETSL). Even if, as the Bureau appears to suggest, the Charter could somehow amend RETSL's provisions to allow appointment another way, it is actually RETSL that is the last-in-time enactment. Aside from the fact that this Court lacks the power to rewrite statutes, *Ursinus College*, in this case the argument is doubly unavailing because the General Assembly specifically addressed home rule. The statutory history is clear.

In that context, the text is clear. Section 601(a)(3) uses a two-part phrase to describe how a person other than the sheriff may be appointed to make personal service: by "the county commissioners, by resolution." No one argues that phrase is ambiguous but the Bureau would have us disregard it to pursue RETSL's spirit. When it amended RETSL in 1986, the General Assembly redefined one part of the phrase—county commissioner—so that it would function in home rule counties. The General Assembly obviously knew it was legislating against that

---

[10] The Bureau represents that "the need for a resolution of county commissioners dates from the original enactment of [RETSL in] 1947." Bureau's Br. at 18. That is flatly wrong. As we have explained *supra*, personal service on owner occupants and appointment by resolution were added to RETSL by amendment in 1980 and 1986, respectively.

8

backdrop. And it did *not* change the other part of the phrase—*by resolution*. The legislature's retention of those words unchanged is the textual dog that didn't bark.[11] The legislature meant to retain them and it said what it meant. The text is unambiguous: the appointment can be done only "by resolution." We agree with Hunter that we must give effect to that phrase.

Finally, the text is also clear that "by resolution" has a meaning that does not include what the County Executive did here. The term "resolution" is not defined in RETSL or in the Statutory Construction Act. 1 Pa.C.S. § 1991. But its common usage is clear. At the time of enactment and in the sense used here, "resolution" meant "[a] formal expression of the opinion or will *of an official body or a public assembly*, adopted by vote; as a legislative resolution."[12] It has the same meaning today. A resolution is a type of parliamentary motion "that formally expresses the sense, will, or action *of a deliberative assembly* (esp. a legislative body)."[13] Although historically one could have spoken of a "resolution" in this sense by an individual, that usage has not been common in centuries.[14] Thus, by its plain

---

[11] *Cf.* Anita S. Krishnakumar, *The Sherlock Holmes Canon*, 84 GEO. WASH. L. REV. 1, 2 (2016) (describing the "'dog that did not bark' cannon," albeit in context of silence in legislative history); *see also Am. Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.*, 42 F.3d 725, 732 (2d Cir. 1994) ("Where sections of a statute have been amended but certain provisions have been left unchanged, we must generally assume that the legislature intended to leave the untouched provisions' original meaning intact.").

[12] *Resolution*, BLACK'S LAW DICTIONARY (5th ed. 1979) (emphasis added); *accord Resolution*, sense 3c(2), WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993) ("[A] formal expression of opinion, will, or intent *by an official body or assembled group*." (emphasis added)).

[13] *Resolution*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

[14] *See Resolution*, sense IV.15.1, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/resolution_n1?tab=meaning_and_use#151458919 (last visited May 30, 2025) ("A formal decision, determination, or expression of opinion by a deliberative **(Footnote continued on next page…)**

9

terms in their common usage, Section 601(a)(3) of RETSL permits appointment only after formal action by a deliberative body. Given RETSL's capacious definition of "county commissioner," that body comprises the "equivalent official[s]" in home rule counties. But to be done by resolution, the action must express the decision or will of a group.

The County Executive's letter is not a resolution. It is a unilateral action or statement by one official, not the multilateral consensus view of a body of officials. It is a usurpation by the executive of legislative powers. The Bureau never even argues that the letter is action "by resolution." If it had so argued, we would reject that argument because the letter is not within the clear meaning of the phrase "by resolution" as used in the law.[15]

We hold that the letter from the County Executive purporting to appoint

---

assembly, committee, court, public meeting, etc. (*in early use also* by an individual)." (emphasis added)); *see also Resolution*, senses 6 & 7a, WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1939) (indicating usage as to action by an individual is obsolete).

[15] We do not consider purpose because the language of the statute is clear. In passing though, we observe that the General Assembly, in requiring action "by resolution," could have meant to incorporate the public notice, participation, transparency, and democratic accountability that comes along with formal actions taken by vote of a deliberative body like the County Council. A letter is not subject to those same procedures.

RETSL is intended to collect taxes, "not to strip away citizens' property rights." *Appeal of Bissell*, slip op. at 11 (quoting *Appeal of Neff*). This is more than property. It is Hunter's home. The people of the Commonwealth have, through their General Assembly, given themselves as homeowners "increased protection by way of additional notice" for owner occupants. *Famageltto v. Cnty. of Erie Tax Claim Bureau*, 133 A.3d 337, 346-47 (Pa. Cmwlth. 2016) (en banc) (quoting *McKelvey v. Westmoreland Cnty. Tax Claim Bureau*, 983 A.2d 1271, 1274 (Pa. Cmwlth. 2009)). That "qualitatively different" notice must come from a formally appointed person (or, if served by the sheriff, from an elected public official in his own right). *Id.* The Bureau can follow those protections to their letter and then it can collect the tax. If, in doing so, the County's appointment receives greater public scrutiny because it is done by resolution, that may be what the General Assembly wished to accomplish.

10

Palmetto to make personal service was ineffective because the appointment was not "by resolution" as Section 601(a)(3) of RETSL requires. Based on the foregoing, the appointment was *ultra vires*. Because Palmetto was not properly appointed to make service and since no other personal service was attempted under Section 601(a)(3), Hunter did not receive the service to which he, as owner occupant, was statutorily entitled.

Accordingly, the trial court erred in dismissing Hunter's petition objecting to the Tax Sale, and we reverse the trial court's order.

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: 2023 Erie County Tax Sales : 
Re: Jermaine L. Hunter, record owner : 
Index No. 14-010-040.0438.00 : 
                                               :   No. 982 C.D. 2024
Appeal of: Jermaine L. Hunter : 

## O R D E R

AND NOW, this 2nd day of June 2025, the June 28, 2024 Order of the Court of Common Pleas of Erie County is REVERSED.

                                        _____

                                        MATTHEW S. WOLF, Judge